**Joe A. LAUGHLIN**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION.**

**No. 12–81–0061–CV.**

Court of Appeals of Texas, Tyler.

Aug. 18, 1983.

**478**

Robert J. Vander Lyn, Stolbun, Kelson & Fox, Houston, for appellant.

Walter Clay Cooke, Meredith, Donnell & Edmonds, Corpus Christi, for appellee.

SUMMERS, Chief Justice.

This is a suit on a promissory note. Suit was brought by Northeast Bank of Houston (hereafter the Bank) against Laughlin to recover the unpaid principal, interest and attorney's fees due under the terms of a promissory note dated June 17, 1974, in the original principal sum of $7,000.00 (hereafter June 17 note) executed by Laughlin and payable to the Bank. Before the case came to trial, the Banking Commissioner for the State of Texas closed the Bank, and as a result the June 17 note was transferred to FDIC in its corporate capacity.

FDIC, as plaintiff, went to trial on its first amended petition. Laughlin's trial pleading was his first amended original answer in which he alleged that the June 17 note was the third renewal of a $7,875.00 note dated September 18, 1973 (hereafter the September 18 note), executed by him in reliance on fraudulent representations made by Felton Leake, President of Northeast Bank, and which he asserts entitled him to rescind the June 17 note.

The evidence shows that in October 1972 Laughlin negotiated a loan with Leake on behalf of Kirkwood Ten, a joint venture of which he was a partner. Under the terms of their agreement, the Bank loaned Kirkwood Ten $156,000.00 secured by a 10-acre tract of land owned by Kirkwood Ten. This loan (hereafter the Kirkwood Ten loan) was due and payable in full in October 1973. In the spring of 1973, Laughlin asked the Bank to release its lien on the 10-acre tract so Kirkwood Ten could sell the land and to substitute a note receivable from the purchasers as collateral for the Kirkwood Ten

loan. The Bank agreed. Laughlin testified that beginning in June 1973 he spoke with Leake on several occasions concerning renewal of the Kirkwood Ten loan which was due in October of that year. Laughlin claimed that in August 1973 Leake told him that the Bank would renew the Kirkwood Ten loan only if the partners of Kirkwood Ten each purchased 1,000 shares of Northeast Bank stock and 1,000 shares of Homestead Bank stock from Herbert Handley, Chairman of Northeast Bank's board of directors. Laughlin further testified that Leake represented to him that the fair market value of both the Northeast Bank stock and the Homestead Bank stock was $8.00 a share.

Leake directly contradicted Laughlin's testimony. He testified that he never required Laughlin or any of his partners to purchase Northeast Bank stock or Homestead Bank stock as a condition for renewal of the Kirkwood Ten loan. Leake further testified he never told Laughlin that Homestead Bank stock was worth $8.00 a share; that he could not recall any conversation with Laughlin regarding the fair market value of Northeast Bank stock, but explained that to his knowledge, all Northeast Bank stock sold during 1973 was sold for $8.00 a share. Laughlin did purchase 1,000 shares of Homestead Bank stock at $8.00 a share, financing the purchase by executing the September 18 note. In addition, Laughlin purchased 1,000 shares of Northeast Bank stock at $8.00 a share which was financed through a loan from Liberty Bank. Laughlin renewed the September 18 note on December 17, 1973, by executing a new note in the amount of $7,675.00. A second renewal of said note was executed by Laughlin on March 18, 1974, in the amount of $7,250.00. On June 17, 1974, Laughlin executed a final renewal note in the amount of $7,000.00 which is the note upon which this suit is based.

After the case was assigned to trial, but before jury selection, Laughlin filed a motion to open and close under Rule 266,[1] admitting FDIC's right to recover as set forth in its petition except so far as it may be defeated by allegations of the answer established as a good defense. The court then realigned the parties, designating Laughlin as plaintiff and FDIC as defendant. Trial was to a jury which found that Laughlin was not fraudulently induced to execute the September 18 note. Based on the jury's verdict, the court rendered judgment in favor of FDIC, and Laughlin now appeals.

We affirm.

Appellant Laughlin brings eight points of error. In his first point he contends that the district court erred in failing to submit his requested issue as follows:

> Do you find from a preponderance of the evidence that Joe A. Laughlin executed Defendant's Exhibit No. 3 [September 18 note] as a result of coercion or in order to preserve his property or protect his business interest?

It is Laughlin's argument that the evidence establishes that there was a requirement that the joint venture partners purchase stock in the Banks. The evidence also shows, and the jury found, that there were misrepresentations made regarding the price and value of the stock. Laughlin argues that the requirements for the renewal of the note had been fulfilled by the joint venture partners and that the Bank merely seized upon the opportunity to exert some pressure due to their economic advantage and obtained the note through duress.

FDIC contends no error was committed by the trial court in refusing to submit Laughlin's coercion special issue because the submission of that issue was not supported by the pleadings. Coercion is an affirmative defense which must be specially pleaded and proved to be available. *Firemans Fund Insurance Co. v. Abilene Livestock Auction Co.,* 391 S.W.2d 147, 149 (Tex. Civ.App.—Dallas 1965, writ ref'd n.r.e.); Rule 94. Only those special issues controlling the disposition of the case that are raised by written pleadings and the evidence are submitted to the jury. Rule 277.

---

1. This and all future references to Rules are to       Texas Rules of Civil Procedure.

Laughlin failed to plead and prove coercion and was thus not entitled to the submission of a special issue on that point.

■ If there is some evidence supporting a special issue, the court should submit it to the jury. See *Southwestern Bell Telephone Co. v. Thomas,* 554 S.W.2d 672, 674 (Tex.1977), cited by Laughlin and FDIC. But, such evidence must raise more than a mere surmise or suspicion of the fact sought to be established—more than a mere scintilla. *Ethicon, Inc. v. Parten,* 520 S.W.2d 527 (Tex.Civ.App.—Houston [14th Dist.] 1975, no writ). The evidence introduced at trial supporting Laughlin's coercion special issue was legally insufficient to require the submission of this issue.

■ Furthermore, in Texas there can be no duress unless there is a threat to do an act which the threatening party has no right to do, coupled with fraud or deception, which threat is so imminent that it destroys the free will of the threatened party. *Lewkowicz v. El Paso Apparel Corp.,* 614 S.W.2d 198, 200 (Tex.Civ.App.—El Paso 1981, no writ); *Tower Contracting Co., Inc. of Texas v. Burden Brothers, Inc.,* 482 S.W.2d 330 (Tex.Civ.App.—Dallas 1972, writ ref'd n.r.e.). Even assuming that Leake required Laughlin to purchase Northeast Bank stock and Homestead Bank stock as a condition for renewing the Kirkwood Ten loan, there is no legally sufficient evidence nor more than a mere scintilla of evidence that Laughlin was so threatened by this requirement that it destroyed his free will and coerced his execution of the September 18 note. Appellant's first point is overruled.

■ Appellant in his second and third points contend that the trial court erred in rendering judgment on the jury finding that the misrepresentation was not made willfully with the intent to deceive, since such finding was contrary to the overwhelming weight and preponderance of the evidence and since such finding was supported by no evidence. Special Issues 6 and 14 [2] were answered by the jury after they had found that Felton Leake represented to Laughlin that the fair market value of Northeast and Homestead Bank stock was $8.00 a share. Laughlin as plaintiff had the burden of proof on such special issues. The answer by the jury means that he failed to carry his burden. *Siboney Corp. v. Chicago Pneumatic Tool Co.,* 572 S.W.2d 4, 7 (Tex. Civ.App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.).

■ In reviewing a "no evidence" point we are guided by Calvert's *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 Tex.L.R. 361, 362 (1960). As to a "no evidence" point, the reviewing court must reject all evidence contrary to the judgment and consider only the facts and circumstances that tend to support the judgment. Calvert, *supra.* A review of the evidence shows Leake testified that to his knowledge all stock sales during 1973 were at $8.00 a share. Laughlin did in fact, purchase the stock for $8.00 per share. The testimony raised a fact issue as to Leake's intent which was properly submitted to the jury. Having viewed the evidence in the light most favorable to the verdict and judgment, we *conclude there was some evidence* that Leake did not make such representation with the intent to deceive Laughlin. Likewise Laughlin's complaint that the jury's answer to such special issue is against the great weight and preponderance of the evidence is without merit. In determining such point, the court must consider and weigh all of the evidence to decide whether the jury's answer is so against the great weight and preponderance of the evidence

**2.** Special Issues Nos. 6 and 14, with the jury's answers thereto, read as follows:

SPECIAL ISSUE NO. 6

Do you find from a preponderance of the evidence that such representation [as to value of Northeast Bank stock] was made wilfully with the intent to deceive Joe Laughlin? Answer 'We do' or 'We do not.'

ANSWER: We do not.

SPECIAL ISSUE NO. 14

Do you find from a preponderance of the evidence that such representation [as to value of Homestead Bank stock] was made wilfully with the intent to deceive Joe Laughlin? Answer 'We do' or 'We do not.'

ANSWER: We do not.

as to be manifestly unjust. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951); *City of Houston v. Davilla,* 582 S.W.2d 183 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.). Having reviewed the entire record in the case we conclude that the finding that Leake did not willfully intend to deceive Laughlin by his representation is not so against the great weight and preponderance of the evidence as to be manifestly unjust. Appellant's second and third points are overruled.

In his fourth and fifth points Laughlin contends that the court erred in rendering judgment on the jury finding that Laughlin had failed to exercise reasonable care for the protection of his own interests since such finding was supported by no evidence or was contrary to the overwhelming weight and preponderance of the evidence. In response to Special Issues 8 and 16,[3] the jury found that Laughlin had failed to exercise reasonable care for the protection of his own interests. Laughlin requested the submission of the following special issue as to both his purchase of Homestead Bank stock and Northeast Bank stock:

Do you find from a preponderance of the evidence that Joe A. Laughlin acted as a reasonably prudent man in purchasing [the stocks]?

The trial court denied the request and instead submitted Special Issues Nos. 8 and 16. Laughlin failed to make an objection at trial to these issues, and moreover he actually requested the court to submit substantially the same issue. Having invited the submission of a similar issue, he cannot complain of its submission upon appeal. *Plains Creamery v. Denny,* 277 S.W.2d 755, 758 (Tex.Civ.App.—Amarillo 1954, writ ref'd n.r.e.). In the instant case, there was ample evidence that Laughlin was aware of the facts which required him to investigate Leake's alleged representations concerning the value of Homestead Bank stock and Northeast Bank stock. A person must exercise reasonable ordinary care for the protection of his own interests and discover the existence of fraud if he has knowledge of facts that would put a reasonably prudent person on inquiry. *Thigpen v. Locke,* 363 S.W.2d 247 (Tex.1962). The unusual nature of the entire transaction obviously put Laughlin on notice and should have required him to investigate further into the value of the stocks. Having reviewed the evidence in the light most favorable to the judgment, we hold there was at least some evidence, more than a scintilla, that Laughlin failed to use reasonable care for the protection of his own interests. Such finding is not so against the overwhelming weight and preponderance of the evidence so as to be manifestly unjust. Appellant's fourth and fifth points are overruled.

Appellant in his sixth and seventh points contend that the court erred in rendering judgment on the jury finding that Laughlin had not relied upon the misrepresentation as to the value of Homestead Bank stock because such finding was supported by no evidence and was against the overwhelming preponderance of the evidence. This point is relative to Special Issue 15.[4]

---

3. Special Issues Nos. 8 and 16, with the jury's answers thereto, read as follows:

SPECIAL ISSUE NO. 8

Do you find from a preponderance of the evidence that in connection with the execution of the note and the purchase of the said stock [Northeast Bank stock] plaintiff, Joe Laughlin, exercised reasonable care for the protection of his own interests?

Answer 'We do' or 'We do not.'

ANSWER: We do not.

SPECIAL ISSUE NO. 16

Do you find from a preponderance of the evidence that in connection with the execution of the note and the purchase of the said stock [Homestead Bank stock] plaintiff, Joe Laughlin, exercised reasonable care for the protection of his own interests?

Answer 'We do' or 'We do not.'

ANSWER: We do not.

4. Special Issue No. 15, and the jury's answer thereto, read as follows:

SPECIAL ISSUE NO. 15

Do you find from a preponderance of the evidence that Joe Laughlin relied upon such representation in executing the said note, Defendant's Exhibit 3?

Answer 'We do' or 'We do not.'

ANSWER: We do not.

Laughlin testified that in September 1973 Leake represented to him that Homestead Bank stock had a fair market value of $8.00 a share. However, when this alleged representation was allegedly made, Laughlin already owned 1,300 shares of Homestead Bank stock. He purchased 1,000 shares from Howard Sampley in 1971, paying $8.00 a share, and acquired the additional 300 shares directly from Homestead Bank prior to 1973. Also, it was Laughlin's opinion his 1,300 shares of Homestead Bank stock had a fair market value of $8.75 per share as of December 31, 1972, the date of his financial statement which was introduced into evidence. Moreover, as of September 30, 1973, approximately 12 days after he purchased the Homestead Bank stock Laughlin was of the opinion that the stock had a fair market value of $8.75 per share as shown by his financial statement of that date also introduced into evidence. A review of the evidence supports the jury's answer to Special Issue No. 15; there is some evidence supporting the jury's finding and such finding is not against the overwhelming weight and preponderance of the evidence. Moreover, the Texas courts have consistently held that when a person makes his own investigation of the facts, he cannot, as a matter of law, be said to have relied upon the misrepresentations of others. *Kolb v. Texas Employers Insurance Assn.*, 585 S.W.2d 870, 872 (Tex.Civ.App.— Texarkana 1979, writ ref'd n.r.e.). A review of all of the evidence indicates that Laughlin relied upon his own knowledge that Homestead Bank stock was worth $8.75 per share, rather than upon Leake's representations. Appellant's sixth and seventh points are overruled.

Finally in his eighth point, appellant contends that the court erred in excluding testimony of Laughlin's discussion with his partners as said evidence is admissible under the "recent fabrication" doctrine as an exception to the hearsay rule. The evidence reflects that Laughlin called John Watson, one of his partners in the Kirkwood Ten joint venture, as a witness at trial. During the course of his direct examination, Laughlin asked Watson to testify regarding certain out-of-court statements made by Laughlin. FDIC objected to this testimony as hearsay, and it was excluded by the court. On a bill of exception Watson testified that Laughlin told him Leake had required Laughlin, Watson and David Sanderson, all partners in Kirkwood Ten, to each purchase stock in Northeast Bank and Homestead Bank as a condition to renewing the Kirkwood Ten loan.

The recent fabrication exception to the hearsay rule permits the introduction of out-of-court statements made by a witness at or near the time of the occurrence in question which are consistent with the witnesses trial testimony *only if* the opposing party first raises the charges of recent fabrication (1) by introducing prior statements of the witness which are inconsistent with his trial testimony or (2) by introducing evidence that the witness failed to speak out at a time he could have been reasonably expected to do so. *Skillern & Sons, Inc. v. Rosen*, 359 S.W.2d 298 (Tex.1962).

In the instant case, however, FDIC did not charge Laughlin with recent fabrication nor did FDIC introduce evidence that Laughlin made prior statements inconsistent with his trial testimony or that he had remained silent when he should have spoken. It was FDIC's position that despite Laughlin's consistent testimony concerning the requirement to purchase Northeast Bank stock and Homestead Bank stock as a condition for renewal of the Kirkwood Ten loan, no such requirement was ever made. Appellant's eighth point is overruled.

Moreover, in our consideration of this case we note that even if the court erred in rendering judgment on the jury's answers to Special Issues 6, 8, 14, 15 and 16, those errors were harmless because Laughlin waived any alleged fraud with regard to the value of the bank stocks when he executed the June 17 note as a renewal of the September 18 note. When one executes an obligation in renewal of a note known to him to be fraudulent, he will be deemed to have freed the transaction of fraud by executing the renewal note. *Gaylord Contain-*

*er Division v. H. Rouw Company,* 392 S.W.2d 118, 120 (Tex.1965); *Maddox v. Old-ham Little Church Foundation,* 411 S.W.2d 375 (Tex.Civ.App.—Tyler 1967, writ ref'd n.r.e.). Since Laughlin waived his defense of fraud, any error of the trial court in rendering judgment based on the jury's answers relative thereto is harmless.

The judgment of the trial court is affirmed.