**REPUBLIC–VANGUARD LIFE INSURANCE COMPANY,**
Appellant,

v.

**Beth WALTERS, Appellee.**

**No. 01–86–0321–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

March 19, 1987.

Rehearing Denied April 16, 1987.

416

Douglas W. Poole, Otto D. Hewitt, III,
James V. Hewitt, McLeod, Alexander, Pow-
el & Apffel, Galveston, for appellant.

Russell G. Burwell, Gregory B. Enos, Burwell & Enos, Inc., Texas City, for appellee.

Before WARREN, HOYT and DUNN, JJ.

## OPINION

WARREN, Justice.

The appellee sued on a contract insuring the life of her deceased husband. Appellant's main defense to the suit was that the insured made material misrepresentations in his application for insurance, and that if it had known the true facts it would not have written the policy.

Judgment was rendered for appellee, based on the jury's finding that the appellant insurer knew facts that would have caused a prudent person to inquire about and discover material facts intentionally omitted by the decedent in his application for the policy.

The main question on appeal is whether, in seeking to avoid a policy on the basis of misrepresentations by the insured, an insurer may justifiably rely on representations that were obviously false at the time they were made.

In 1981, the decedent, James B. Walters, applied to the appellant for mortgage protection life insurance. In the application, which he received in a mail solicitation, he stated that he knew of no impairment to his health, and that he had visited a doctor during the previous two years for treatment of a sprained and bruised back.

At the appellant's request, Mr. Walters consented to an examination by a registered nurse. She completed a form detailing his personal history, in which he reported that he had been hospitalized within the previous five years for hernia repair and back treatment; that he had been treated in 1957 for a lung ailment; that he had gained 50 pounds in the previous year "due to beer drinking"; that he had been wounded in Vietnam; and that he underwent an annual electrocardiogram at the Marine Hospital in Galveston.

When the nurse asked whether he had any "[i]mpaired sight or hearing; other physical impairment, sickness, mental illness, injury; cancer; growth; rupture; syphilis," Mr. Walters said he did not. In addition to the Galveston Marine Hospital, he provided the names and addresses of Dr. Minyard, of Dr. P. Cunningham, who also treated his back, and of St. Mary's Hospital in Galveston.

The appellant's underwriter requested a copy of Dr. Minyard's records for the hernia and back treatment, but requested no other information from the decedent or his doctors. On November 1, 1981, the appellant issued a mortgage protection life insurance policy, with an initial death benefit of $42,900.

In the early morning hours of December 23, 1982, the appellee shot and killed her husband during the course of a violent struggle that also involved her 19-year-old son, the decedent's stepson. The appellee testified that her husband had a drinking problem; that he had become drunk and beaten her on previous occasions, causing her to call the police; and that he had earlier ripped their telephone from the wall to prevent her from calling again for assistance.

On the night of his death, she further testified, the decedent had broken her glasses, beaten her, attempted to gouge her face with a wire clothesline, and bloodied her nose; that when her son came to her aid, the decedent began choking him; that she retrieved a revolver and fired it, intending to frighten the decedent; that two bullets struck and killed him; and that she called the police after locating and plugging in a new telephone she had hidden from the decedent.

As the death occurred within two years of the policy's issuance, under the policy's terms the appellant was allowed to contest claims on the basis of misrepresentations by the insured. *See* Tex.Ins.Code Ann. art. 3.44, § 3, art. 21.35 (Vernon 1981). After the insured's death, the appellant requested all of the decedent's medical records and conducted a thorough investigation of the claim.

The investigation revealed that the decedent had been treated for depression, beginning in 1977; that he was hospitalized from September 30 to November 28 of that year, and from January 19 to January 30, 1979; and that in February 1979, he was hospitalized after he had taken an overdose of a drug prescribed for his depression. Because Mr. Walters had represented a history free of mental illness, the appellant declared the policy void from its inception and refunded the premiums paid, in a letter to the appellee dated May 18, 1983.

In response to special issues, the jury found that (1) the decedent had intentionally misrepresented material facts in his application for the policy; (2) that the appellant insurer relied on those misrepresentations in issuing the policy; (3) that the appellant knew facts that would have caused a prudent person to inquire further, and that such an inquiry would have disclosed omissions in the application; and that the appellee did not intentionally and illegally bring about the death of her husband.

The appellant's first six points of error complain, on various grounds, of the submission of special issue number four, which inquired: "Did the Defendant know facts which would have caused a prudent person to inquire of said facts and would an inquiry, made with reasonable diligence, have disclosed the omissions questioned by the Defendant made by the deceased?" The special issue was preceded by this instruction:

You are instructed that if the Defendant, its agents or employees, knew of any false representations or misrepresentations or knew of such facts which would put a prudent person on inquiry and such inquiry, made with reasonable diligence, would have disclosed the falsity of the statements, then the Defendant cannot assert the false answers to avoid the policy. Further, the Defendant waives the right to assert only those false statements, if any, of which it knew or should have known.

In the fifth point of error, the appellant asserts that the trial court erred because

special issue number four was defective and not submitted in substantially correct form. The appellant argues that the issue applied the wrong standard to the facts, and that the correct standard requires actual knowledge before an insurer can be charged with waiver of false statements made by an insured.

■ The elements establishing an insurer's right to avoid a policy for misrepresentation are (1) the making of the representations, (2) the falsity of the representations, (3) reliance thereon by the insurer, (4) intent to deceive on the part of the insured, and (5) the materiality of the representations. *Mayes v. Mass. Mut. Life Ins. Co.,* 608 S.W.2d 612, 616 (Tex.1980). Special issue number four, which addressed the reasonableness of the appellant's investigation of the decedent's health, in light of the facts in the appellant's possession, dealt with the element of reliance.

The special issue in controversy was derived, verbatim, from *Jefferson Amusement Co. v. Lincoln Life Ins. Co.,* 409 F.2d 644, 650 (5th Cir.1969), a federal case applying Texas law. The *Jefferson* court, holding that such an instruction was proper, noted that an insurer is not entitled to rely on its insured's representations when an investigation reveals the falsity of the representations or discloses facts that would put a prudent person on further inquiry. *Id.*

The rule stated by the *Jefferson* court has been adopted in a number of jurisdictions, and applies when an insurer's independent investigation reveals that an applicant's case involves unusual circumstances that warrant further inquiry. *See* Annotation, *Independent Investigation by Insurer as Affecting its Right to Avoid Policy Because of Misrepresentations in Application,* 169 A.L.R. 361, 364 (1947). The rule does not apply when the insurer is unable to learn the truth from its investigation, and in fact relies on the representations. *Id.* at 361.

As the appellee observes, no Texas court has squarely addressed the question of whether an insurer's reliance must be reasonable, in light of facts discovered during

an investigation, but the question has been answered affirmatively in other contexts. *Thigpen v. Locke,* 363 S.W.2d 247 (Tex. 1963); *Laughlin v. Federal Deposit Ins. Corp.,* 657 S.W.2d 477 (Tex.Civ.App.—Tyler 1983, no writ).

In the *Thigpen* case, the supreme court held that the confidential relationship between the parties negated the ordinary rule that,

> [i]n an arm's-length transaction the defrauded party must exercise ordinary care for the protection of his own interests and is charged with knowledge of all facts which would have been discovered by a reasonably prudent person similarly situated. And a failure to exercise reasonable diligence is not excused by mere confidence in the honesty and integrity of the other party.

363 S.W.2d at 251 (quoting *Courseview, Inc. v. Phillips Petroleum Co.,* 158 Tex. 397, 312 S.W.2d 197 (1957)).

In *Laughlin,* the appellant sought to avoid payment on a promissory note, contending that the terms on which the appellee, a bank, offered the loan were misrepresentations. The appellant testified at trial that the loan was made to him on the condition that he buy 1,000 shares of bank stock at $8 per share, and the jury found that the value of the stock was misrepresented by the bank. However, the jury found that the appellant had acted unreasonably in purchasing the stocks. The Tyler court, citing *Thigpen,* held that the "unusual nature of the entire transaction obviously put [the appellant] on notice and should have required him to investigate further into the value of the stocks." 657 S.W.2d at 482.

■ We hold that the court properly submitted special issue number four.

In the sixth point of error, the appellant asserts that the trial court erred because special issue number four was an inferential rebuttal issue as to special issues one through three. Those issues inquired: (1)

whether the decedent knowingly made false representations with the intent to induce the appellant to issue the policy; (2) whether any misrepresentations made were material to the risk, such that the policy would not have issued had the true facts been known; and (3) whether the appellant relied upon the truth of the decedent's false answers in issuing the policy.

The appellant contends that the first three special issues, as a conglomeration, inquired whether the appellant *knew* of the decedent's misrepresentations. Because, the appellant argues, the reasonableness of its reliance is irrelevant, the fourth special issue served no purpose other than to rebut its lack of knowledge of the falsity of decedent's representations, or of its reliance on their truth. We disagree.

■ The fourth special issue related to the reasonableness of the appellant's inquiry and did not pertain to the appellant's knowledge of the decedent's falsehoods. But the question of reasonableness does relate to the issue of reliance, and should have been linked with that special issue, number three; however, the issue as submitted does not amount to reversible error.

■ The appellant's allegations of fraud were an affirmative defense to the appellee's suit on the insurance contract. Tex.R. Civ.P. 94. To establish its defense the appellant bore the burden of proving, along with the other elements, that it reasonably relied on the truth of decedent's misrepresentations. *Jefferson,* 409 F.2d at 650. The fourth special issue wrongly placed the burden on the appellee of proving that there was *no* reasonable reliance. The appellee does not complain of this error now, nor did she request that the burden be placed, at trial, upon the appellant, by requesting that the third special issue ask if there was *reasonable* reliance.[1]

■ "A party objecting to a charge must point out distinctly the matter to which he

---

1. A proper charge on this issue should inquire: "Did the insurer reasonably rely upon the truth of the false answer given by the insured in deciding to issue the policy in question?" The issue should be preceded, not followed, by the "prudent inquiry" instruction given by the trial court in this case.

objects and the grounds of his objection." Tex.R.Civ.P. 274. The appellant waived its complaint by failing to object to the submission of the fourth special issue on the ground that it was an inferential rebuttal issue. Moreover, the submission of the element of reasonableness in the form of an inferential rebuttal issue, rather than as an element of the reliance issue or as an instruction, did not cause the rendition of an improper judgment in the case, and therefore was not reversible error. Tex.R. App.P. 81. Appellant's sixth point of error is overruled.

In its fourth point of error, the appellant claims that the jury's answer to special issue number four was rendered immaterial by its findings, in response to the first three issues, that the appellant did not actually know of the decedent's falsehoods.

The question of reasonableness, posed by the fourth special issue, related to an essential defensive element. The finding that the appellant failed to make prudent inquiry was material to the question of reasonable reliance, and it did not conflict with the finding that the appellant did in fact (though perhaps unreasonably) rely on the falsehoods. An appellate court's first duty is to harmonize jury findings, rather than to needlessly find them to be in conflict or immaterial. *Bender v. S. Pac. Transp. Co.*, 600 S.W.2d 257, 260 (Tex. 1980). The fourth point of error is overruled.

■ The first three points of error complain that the evidence was legally insufficient or, alternatively, factually insufficient to support the jury's answer to the fourth special issue.

The appellant argues that it did not know of facts that would put a prudent person on notice that further inquiry was required. Although the medical examination revealed inconsistencies between the insurance application, which stated that the decedent's only medical problem had been a sprained and bruised back, and the decedent's actual history of a hernia, excessive weight gain, and annual electrocardiograms, Mr. Walters gave no indication that he suffered from mental illness. He did not name the

physician, Dr. Towler, who treated his depression, or the hospital, the University of Texas Medical Branch, where he was treated.

The appellee cites the evidence that the medical examination revealed a range of other medical problems and a list of four other health care providers. She contends that these facts created a duty to investigate, even though they did not indicate mental illness, and that the medical records from the providers listed by Mr. Walters would have revealed the problems that the insurer did not discover until its final investigation of the claim. The Galveston Marine Hospital records referred to Mr. Walters's treatments for depression at the University of Texas Medical Branch, and were available to appellant had it decided to obtain them prior to issuing the policy.

In the *Jefferson* case, 409 F.2d 644, as here, a medical examination revealed information that was inconsistent with the initial application. In his application, the decedent in *Jefferson* had failed to list the names of three doctors who had treated him, including one who had treated him for chest pains. The insured died after a heart attack. The court held that the facts supported a finding that the insurer waived its right to rely on the false representations because, at the examination, the insured had given the names of two of the previously unreported doctors; a reading of their records would have identified the third doctor, who knew of the chest pains. The court stated that the insurer failed to make a prudent inquiry because "[i]t did not follow up all its leads which would have revealed all that it knows now except the results of the post-mortem." *Id.* at 649.

In our case, the appellant learned, from the nurse's examination, of a number of medical problems that Mr. Walters failed to report on his initial application. He supplied the name of a hospital whose records, if read, would have informed the appellant of his treatment for depression. Based on these facts, it might reasonably be expected that the insurer would have ordered and read medical records that would have fully informed it of the details behind the dece-

dent's excessive weight gain, his back surgery by Dr. Cunningham, and his annual electrocardiograms. The evidence supported the submission of an issue, and, regardless of insurance industry custom, the question of whether the appellant's investigation met the standard required of a prudent person was within the province of the jury. *See Air Control Eng'g, Inc. v. Hogan*, 477 S.W.2d 941, 946 (Tex.Civ.App. —Dallas 1972, no writ) (whether standard of care was met is jury question); Restatement (Second) of Torts § 328C (1965).

Appellant's first three points of error are overruled.

The seventh point of error complains that the evidence was insufficient to support the trial court's additional findings that Mrs. Walters was the beneficiary of the policy; that the decedent was aware of the appellant's investigation into his health; and that Mr. and Mrs. Walters relied on Republic's failure to reject the application.

■ The appellee's original petition in this case alleged that she was the beneficiary of the benefits payable under the policy. The appellant was bound to file a verified denial that the appellee was not entitled to recover in the capacity in which she sued; barring such a denial, the matter was deemed admitted. Tex.R.Civ.P. 93(2). Furthermore, in the direct examination of Barry Bourland, the appellant's employee, the following testimony was heard by the jury:

Q. (By Mr. Burwell) Now, the mortgage company is named as the beneficiary because this policy is designed to pay off that obligation?

A. Right.

Q. The actual beneficiary, if you will, in this particular case is Beth Walters, the surviving widow; is that correct, the equitable beneficiary, if you will?

A. Yes.

Q. The reason in the Request for Admissions that that Admission was denied was because she is technically not the beneficiary?

A. Correct.

Q. But that's a procedural problem that we don't have to overcome; is that correct, sir?

A. That's correct.

■ This testimony clearly supported the trial court's finding that the appellee was a policy beneficiary. *See United States v. United Services Auto. Ass'n*, 431 F.2d 735, 737 (5th Cir.1970), *cert. denied*, 400 U.S. 992, 91 S.Ct. 459, 27 L.Ed.2d 440 (1971).

Mr. Bourland also testified that the decedent submitted to a medical examination at the request of the appellant. This evidence established that he knew of the appellant's investigation into his health.

Mrs. Walters testified that she and her husband obtained no other mortgage protection insurance because her husband was accepted as an insured by the appellant. This was evidence upon which the court could base its finding that Mr. and Mrs. Walters relied on the appellant's failure to reject the application. Point of error seven is overruled.

In its eighth point of error, the appellant asserts that there was legally and factually insufficient evidence to support the jury's answer to the fifth special issue, the finding that Mrs. Walters did not intentionally and illegally kill her husband.

The appellant argues that the killing was not legally justified because Mrs. Walters was not personally threatened by the decedent at the time, nor was her son in immediate danger of serious harm. The appellant notes that, although Mrs. Walters testified that her husband was choking his stepson at the time of the shooting, Kevin did not report the choking in his statement to the police.

The trial court gave the jury this instruction:

You are further instructed that under our law of self-defense, a person is justified in using deadly force against another to protect a third person if, under the circumstances as he reasonably believes them to be, such person would be justified in using force or deadly force to protect himself against the unlawful or

**422**

deadly force of another which he reasonably believes to be threatening the third person he seeks to protect, provided he also reasonably believes that his intervention is immediately necessary to protect the third person.

■ Mrs. Walters's testimony supported the jury's finding because, accepting her testimony as true, the jury could have found that she reasonably believed her intervention was immediately necessary to protect Kevin. Thus, the evidence is legally sufficient, *Williams v. Bennett*, 610 S.W.2d 144, 145 (Tex.1980), and the evidence was factually sufficient because the finding was not "so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust...." Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Texas L.Rev. 361, 367–68 (1960). Appellant's eighth point of error is overruled.

In its ninth point, the appellant contends that the trial court erred in assessing a 12% penalty and attorney's fees in its judgment, as provided by Tex.Ins.Code Ann. art. 3.62, because, it is argued, the policy was null and void at its inception, and because the policy beneficiary, Mercantile Mortgage Corporation, made no demand for payment.

In light of our holding that the policy was not void at its inception, and that Mrs. Walters was the real beneficiary of the policy, the ninth point of error is without merit, and is overruled.

The judgment of the trial court is affirmed.