HARRIS COUNTY, Texas, Appellant,

v.

Michael Curtis DILLARD, Individually and as next friend of Michael Curtis Dillard, II and Misty Lynn Dillard, Minors, and as Personal Representative of the Estate of Lila Jean Dillard, Deceased, and Stephanie Hunold, Appellees.

No. 01–91–00114–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 12, 1992.

Rehearing Denied Nov. 12, 1992.

Mike Driscoll, Eleanor Robinson, Houston, for appellant.

Merry Miller, Houston, for appellees.

Before DUGGAN, COHEN and PRICE, JJ.

## OPINION ON MOTION
## FOR REHEARING

PRICE, Justice.[1]

We withdraw our earlier opinion, we substitute the following opinion in its stead, and we overrule appellant's motion for rehearing.

Harris County appeals a jury verdict finding that James Earl Skeen, a former Harris County reserve deputy sheriff, was acting in the scope of his employment when he caused a fatal automobile crash. In seven points of error, Harris County asserts error because its motion for summary judgment was overruled, its jury charge definitions were overruled, and there was no evidence or insufficient evidence to support the jury's verdict that Skeen was acting in the scope of his employment. We affirm.

On August 3, 1986, at approximately 1:30 a.m., James Earl Skeen was taking his female companion, Terry Howell, to her home. Skeen and Howell had spent the previous three hours at Tejas Tavern and had consumed two pitchers of beer. Each

---

1. The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

pitcher was equivalent to about five cans of beer. As Skeen entered Spencer Highway he saw a car "coming up on me at a very high rate of speed." Skeen felt something was wrong and thought the driver was unsafe and needed to be taken off the road.

Skeen, a Harris County reserve deputy sheriff, put himself on duty, and sped up to get the license plate number of the vehicle. While in pursuit, Skeen reached down to turn on his two-way radio so he could tell Communications Central he had placed himself on duty and was in pursuit of a vehicle. Skeen further intended to give the license plate number and request that Pasadena police stop the vehicle. As Skeen reached down to grab the microphone, he saw a car in the left turn lane in front of him. He was within "pin needles of slamming into the car making the left," and "yanked the wheel to the right" to avoid that car. Skeen drove off the road into a "little bar ditch." He was able to drive back out of the ditch, but, when he hit the roadway, his car went into a spin, crossed four lanes of traffic, and crashed head-on into an oncoming vehicle.

Stephanie Hunold was driving that vehicle. She was seriously injured. Her passenger, Lila Jean Dillard, was killed. Skeen was given an intoxilyzer test approximately one and one-half hours after the accident occurred. The test showed Skeen's blood alcohol level at .15 percent.

Skeen was convicted of involuntary manslaughter. In the instant civil suit, co-defendant, Tejas Tavern, settled for $430,-000, and the uninsured motorist carrier settled for an unspecified amount before trial.

■ In point of error one, Harris County asserts the trial court erred in overruling its motion for summary judgment since it was immune from suit. This issue is moot. When a party who has moved unsuccessfully for summary judgment subsequently loses in a conventional trial on the merits, the order overruling the motion is not reviewable on appeal. *Ferguson v. Kelly*, 728 S.W.2d 397, 398 (Tex.App.—Beaumont 1987, no writ).

Point of error one is overruled.

In point of error three, Harris County asserts the trial court erred in overruling its motions for instructed and directed verdict. It argues there was no evidence to show Skeen was in the course and scope of employment with Harris County at the time of the accident.

At the close of the plaintiff's case, Harris County moved for an instructed verdict on the basis that no evidence was introduced to show Skeen was within the course and scope of employment with Harris County at the time of the accident, and, if anything, the evidence showed Skeen had committed an intentional act for which Harris County could not be liable. The trial court denied the motion. After both parties had rested, Harris County moved for a directed verdict on the dual bases that it was not given proper notice of the incident, and that Skeen committed an intentional act for which Harris County was immune. The trial court denied the motion.

The courts of this state have repeatedly held that it is error to instruct a verdict when the evidence raises any material fact issue. *Texas Employers Ins. Ass'n v. Page*, 553 S.W.2d 98, 100 (Tex.1977). In passing upon the question of the trial court's authority to instruct a verdict, the evidence must be considered in the light most favorable to the party against whom the verdict is instructed. *Id.* Where there is any conflicting evidence in the record of probative nature, a determination of the issue is for the jury. *Id.*

As will be discussed herein, the evidence showed Skeen responded in the manner he was trained to respond as a Harris County reserve deputy sheriff, that Skeen reported the accident to his immediate superior who relayed the report to the Harris County Sheriff's Department, and that Skeen did not act intentionally in causing the accident. Since there was conflicting evidence in the record of probative nature, the trial court did not err in overruling Harris County's motions for instructed and directed verdict.

Point of error three is overruled.

In points of error two and seven, Harris County asserts the trial court erred in over-

ruling its objections to the definitions in the jury charge for "employee," "intentional act," "reckless," and "grossly negligent."

Under rule 277 of the Texas Rules of Civil Procedure, the court shall submit those instructions and definitions necessary for the jury to properly render a verdict. In implementing this rule, trial courts have wide discretion. *See Mobil Chemical Co. v. Bell,* 517 S.W.2d 245, 256 (Tex.1974). The standard of review for a trial court's instruction to the jury is that an error on instructing or failing to instruct must have caused, or can be reasonably calculated to have caused, the rendition of an improper verdict. *See, e.g., Gulf Coast State Bank v. Emenhiser,* 562 S.W.2d 449, 453–59 (Tex. 1978); Tex.R.App.P. 81(b)(1);

■ In point of error two, Harris County complains the trial court erred in overruling its objection to the definition of "employee" in question three. Appellees counter Harris County waived its objection because it made only a general objection and requested a substitution.

Question three read:

On the occasion in question, was James Earl Skeen acting as an employee of Harris County within the scope of his employment?

You are instructed that "employee" includes an officer, *volunteer* or employee, a former officer, *volunteer* or employee, and the estate of an officer, *volunteer* or employee, or former officer, *volunteer* or employee of a local government.

(Emphasis added.)

Harris County objected to the definition and requested that the trial court substitute the definition from the Texas Tort Claims Act, Tex.Civ.Prac. & Rem.Code Ann. § 101.001(1) (Vernon Supp.1992):

"Employee" means a person, including an officer or agent, *who is in the paid service of a governmental unit* by competent authority, but does not include an independent contractor, an agent or employee of an independent contractor, or a person who performs tasks the details of

which the governmental unit does not have the legal right to control.

(Emphasis added.)

■ An objection to the charge or a portion of the charge must point out specifically the objectionable matter and the grounds of the objection; otherwise the complaint is waived. *Davis v. Campbell,* 572 S.W.2d 660, 663 (Tex.1978); Tex.R.Civ.P. 274. The purpose is to allow the trial court an opportunity to correct its mistake.

In this instance, Harris County explained that its primary objection to the proposed definition was the inclusion of the term "volunteer" in the definition of employee. This explanation afforded the trial court an opportunity to correct any error by the inclusion of "volunteer" in the definition and preserved any such error for appeal.

■ We next consider whether the trial court erred in including the term "volunteer" in the definition of employee.

■ Under the Tort Claims Act, a governmental unit in the state is liable for personal injury and death caused by the use of an automobile if the governmental unit would, "were it a private person, be liable to the claimant according to Texas law." In *El Paso Laundry Co. v. Gonzales,* 36 S.W.2d 793 (Tex.Civ.App.—El Paso 1931, writ dism'd), a volunteer worker in a private business was held to have the same status as an employee. In *Smith v. The University of Texas,* 664 S.W.2d 180 (Tex.App.—Austin 1984, writ ref'd n.r.e.), the appellate court adopted the reasoning in *El Paso Laundry* to determine when a volunteer worker will have the same status as an employee under the Texas Tort Claims Act. Private liability, and therefore liability under the Texas Tort Claims Act, is found whenever the governmental unit:

1. Has a right to direct the duties of the volunteer;

2. Has an interest in the work to be accomplished;

3. Accepts direct or incidental benefit derived from the volunteer's work; and

4. Has a right to fire or replace a volunteer.

*Smith,* 664 S.W.2d at 190–91.

In *Smith,* the appellate court reversed a summary judgment in favor of a governmental entity alleging immunity from a suit based on the actions of a volunteer. The volunteer was appointed by a head track coach to be the presiding official for a shot-put event. The volunteer official had the authority to direct contestants and to designate the areas to be used for practice and the event itself. The plaintiff sued the university alleging he was injured as a result of the volunteer's negligence during the event. The court of appeals in reversing the summary judgment held the volunteer had the same status as an employee under the Texas Tort Claims Act.

In this instance, the Harris County Sheriff's Department had the right to direct Skeen's duties, as evidenced by the department directives introduced at trial; it had an interest in the law enforcement work to be accomplished by Skeen; it accepted direct benefit from Skeen's volunteer work, as evidenced by the several apprehensions made by Skeen; and it had the right to fire or replace Skeen, as evidenced by Skeen's alleged suspension at the time of the accident. We hold the definition of "employee" submitted to the jury did not impose a greater burden than the law requires.

Appellant's second point of error is overruled.

■ In point of error seven, Harris County asserts the trial court erred in overruling its objection to the definitions for "intentional act," "reckless," and "grossly negligent" in question eight. Appellees counter that in objecting to the court's charge, as in its objection to the definition of "employee" in question two, Harris County did not specify the objectionable language or give a specific ground for its objection.

Question eight read:

Were such acts of James Earl Skeen that were a proximate cause of the collision in question (a) an intentional act by him or (b) an act constituting gross negligence by him?

. . . .

"An Intentional Act" means that the actor desires to cause consequences of his act, or that he believes the consequences are substantially certain to result from it.

"Gross negligence" means such an entire want of care as to indicate that the act or omission in question was the result of conscious indifference to the rights, welfare, or safety of the persons effected [sic] by it. In order to find gross negligence against Defendant James Earl Skeen, you must find that the act or omission in question was committed with malice or evil intent, or such gross negligence as to be equivalent to such intent.

The record reflects the following occurred just prior to the reading of the charge:

County: The Defendant objects to Question No. 8 also because of the definition that is outlined for "An Intentional Act," Your Honor, that particular definition. I provided the definition taken basically straight out of the Texas Pattern Jury Charge which outlines various elements that are needed for an intentional act. I would like for the Court to take notice of that particular definition.

The Court: Let me see it.

The Court: Go ahead, please. Do you have any other objections?

. . . .

The Court: All objections are overruled except the addition to the Court's Charge of the requested instruction on scope of employment.

"A party objecting to a charge must point out distinctly the objectionable matter and the grounds of the objection." TEX. R.CIV.P. 274. Here, Harris County failed to specify the objectionable language in the charge defining "intentional act," and asked the Court only to "take notice" of the preferred definition. Thus, nothing is preserved for review.

Question eight did not ask about or give a definition for "reckless." Harris County did not brief the error, if any, regarding

this term. The record reflects the County was granted leave to file a trial amendment, but that amendment did not reflect "reckless disregard" as the County intended. The trial court denied the County leave to file a second trial amendment to correct this omission. Nothing is presented here for review.

■ In considering Harris County's complaint about the submitted definition of "gross negligence," we note the instruction given was the very one Harris County requested. An objection to certain material in the charge will not preserve error when the objecting party requested the same or substantially similar material. *Laughlin v. Federal Deposit Ins. Corp.*, 657 S.W.2d 477, 482 (Tex.App.—Tyler 1983, no writ).

Appellant's seventh point of error is overruled.

■ In point of error four, Harris County contends Skeen's acts could not be imputed to itself because the evidence offered by appellees was both factually and legally insufficient to sustain the jury's answer to: (1) question one regarding notice to Harris County of the accident; (2) question three regarding whether Skeen was acting within the scope of his employment; and (3) question eight regarding whether Skeen was grossly negligent. Contentions two and three are encompassed in, and will be discussed with, points of error five and six.

Contention one complains of the jury's finding with respect to question one, which read:

Do you find that Harris County, acting by and through its employees, had *actual* notice that Lila Jean Dillard's death had occurred, that Stephanie Hunold received personal injury, or that there had been property damage within six months after the day this automobile collision occurred?

(Emphasis added.)

A claimant under the Texas Tort Claims Act must give the governmental unit notice. Section 101.101 of the Act provides:

(a) A governmental unit is entitled to receive notice of a claim against it under this chapter not later than six months after the day that the incident giving rise to the claim occurred. The notice must reasonably describe:

(1) the damage or injury claimed;

(2) the time and place of the incident; and

(3) the incident.

(b) A city's charter and ordinance provisions requiring notice within a charter period permitted by law are ratified and approved.

(c) The notice requirements provided or ratified and approved by Subsections (a) and (b) do not apply if the governmental unit has *actual* notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged.

TEX.CIV.PRAC. & REM.CODE ANN. § 101.101 (Vernon 1986) (emphasis added).

In this case, there was testimony from Skeen and his supervisors that a report had been written and placed in Skeen's file. Skeen testified he told Lieutenant Russell E. "Rusty" Smith, Jr. his immediate supervisor, that the accident occurred while he was in pursuit of the speeding car. Smith wrote a report, dated August 3, 1986, relating that information to Captain Randy Loper of the Harris County Sheriff's Department. The report described the accident including the time, place, and individuals involved.

■ Under TEX. LOCAL GOV'T CODE ANN. § 81.041 (Vernon 1988), notice of claims against counties must be given to the commissioners court. However, section 81.041 does not apply to actions under the Tort Claims Act. *Harris County v. Dowlearn*, 489 S.W.2d 140, 145 (Tex.Civ. App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.); *Rosales v. Brazoria County*, 764 S.W.2d 342, 344 (Tex.App.—Texarkana 1989, no writ). With respect to counties, the county as a whole constitutes the governmental unit, and the sheriff is not a separate unit of government within the meaning of the Tort Claims Act. *Rosales*, 764 S.W.2d at 344; *County of Brazoria v. Radtke*, 566 S.W.2d 326, 328 (Tex.Civ. App.—Beaumont 1978, writ ref'd n.r.e.).

Actual notice provisions are not limited to particular local government officials. If notice is received by an agent or representative who has a duty to gather facts and report, the notice is imputed to the government. *Rosales*, 764 S.W.2d at 344; *City of Galveston v. Shu*, 607 S.W.2d 942, 945 (Tex.Civ.App.—Houston [1st Dist.] 1980, no writ).

The Harris County Sheriff's Department was notified on the day of the accident by way of Lt. Smith's accident report. Harris County's first contention in point of error four is without merit.

■ In contentions two and three under point of error four, and in points of error five and six, Harris County contends there is no evidence, or in the alternative insufficient evidence, to support the jury's finding that Skeen was in the course and scope of his employment with Harris County and was not acting intentionally or grossly negligent at the time the incident occurred.

In reviewing legal insufficiency or "no evidence" points, the reviewing court considers only the evidence and inferences, when viewed in their most favorable light, that tend to support the finding and disregards all evidence and inferences to the contrary. *Davis v. City of San Antonio*, 752 S.W.2d 518, 522 (Tex.1988). If there is any evidence of probative force to support the finding, the point must be overruled and the finding upheld. *Sherman v. First Nat'l Bank*, 760 S.W.2d 240, 242 (Tex. 1988); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

Only one standard of review is used in reviewing factual sufficiency challenges, regardless of whether the court of appeals is reviewing a negative or affirmative jury finding or whether the complaining party had the burden of proof on the issue. *M.J. Sheridan & Son v. Seminole Pipeline*, 731 S.W.2d 620, 623 (Tex.App.—Houston [1st Dist.] 1987, no writ). The court of appeals must first examine all of the evidence, *Lofton v. Texas Brine Corp.*, 720 S.W.2d 804, 805 (Tex.1986); *Glockzin v. Rhea*, 760 S.W.2d 665, 666 (Tex.App.—Houston [1st Dist.] 1988, writ denied). After having considered and weighed all of the evidence, the court of appeals should set aside the verdict only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *Otis Elevator Co. v. Joseph*, 749 S.W.2d 920, 923 (Tex.App.—Houston [1st Dist.] 1988, no writ).

In point of error five, Harris County asserts there was no evidence to show Skeen was acting within the course and scope of his employment at the time of the incident. Harris County relies in part on an affidavit by Sheriff Klevenhagen, attached to its second motion for summary judgment, stating that Skeen was not called to duty by the County and was not authorized to place himself on duty. The sheriff's affidavit, however, was not introduced at trial. Since this appeal is from a jury trial on the merits, we cannot consider evidence that was not before the jury.

Harris County claims the evidence is uncontradicted "that at the time of the accident, the vehicle Skeen was driving was not owned or authorized by the Harris County Sheriff's Department, and Skeen was an inactive reserve deputy sheriff, not on active [duty]."

The record reflects, however, the following controverting testimony by Skeen:

Q: Harris County has contended in this lawsuit that you were suspended at the time of the collision; is that true?

A: No. That is just as false as you can get.

Q: Sir, were you in fact suspended after this collision?

A: Yes. I was notified at approximately 5:00 or 5:30 in the morning on the 3rd after I had been down at the Pasadena Police Department. Lt. Rusty Smith came down there and visited with me a few minutes, and took my badge and my I.D. was in property, of course, because I didn't have it on me, it was in my car at the time. He took my badge and I.D. and notified me and told me that I was on temporary suspension pending an investigation of this accident.

Q: Mr. Skeen, Lieutenant Smith has just told us that you were suspended on August 3, 1986. Isn't it true, sir, that you were not suspended on that date until after the collision occurred?

A: No, ma'am, I was not. That is inaccurate. That is the biggest lie I have heard in this courtroom since I have been in here.

. . . .

Q: Mr. Skeen, did you have the authority under the Directive 85–10 to place yourself in the line of duty if circumstances so warranted it?

A: Yes, ma'am, I did. Otherwise it would not have been done.

Skeen also testified that when he returned from leave of absence in July 1986, Lt. Smith returned his badge and ID. Skeen testified he went to Smith's house and the following transpired:

He handed me my badge and ID back. He asked me to make a couple of assignments close to the end of July, which I made the assignments. We stepped outside, and I advised him that I had just picked up another vehicle from another deputy that I had just purchased. He personally asked me, "Did you put your radio in the car? Is your two-way out of the other car and into this car?" I said, "Yes, sir, it is." He said, "Okay. You are all right. You have got your numbers back. You are on status."

If there is more than a scintilla of evidence to support the finding, the no evidence challenge fails. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987). Here Skeen's testimony is evidence in support of the jury's finding.

We next consider whether the jury's finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. The evidence shows Skeen, a certified peace officer, had completed a 70–hour law enforcement course required for reserve deputies, and a 320–hour course at Texas A & M required for basic certification as a law enforcement officer. Skeen became a Harris County Sheriff's Department reserve deputy in December 1981. Over the next five years, Skeen worked over 100 hours per month for three and a half years; received four letters of commendation; was allowed to sign out a sheriff's car and answer calls for an eight-hour shift; had his privately owned vehicle authorized, registered, and outfitted with a two-way radio and Kojak emergency lights; had his own radio call number; and on several occasions put himself on duty in accordance with policy directive R–85–10, which authorized such action when a reserve deputy saw a crime committed in front of him; and none of his apprehensions had been invalidated by the Sheriff's Department.

According to the Harris County Sheriff's Department, at the time of the accident Skeen was assigned to jail duty and not allowed to patrol. Further, Skeen had destroyed his authorized car in a recent accident, and the car he was driving the night of the accident was not formally authorized and registered with the department. Harris County attempted to introduce time sheet records to show Skeen was suspended at the time of the accident, but because it had violated a discovery request, the evidence was disallowed. Lt. Smith testified he had no personal knowledge Skeen was suspended at the time the collision occurred. In any event, the evidence was uncontroverted that Skeen had possession of his badge, ID, two-way radio, and emergency Kojak light at the time of the accident, all indicative that he was not suspended and not prohibited from putting himself on duty.

Additionally the evidence shows that by putting himself on duty the night of the accident and pursuing a vehicle, Skeen violated department policies: Policy and Ethics Manual chapter 12.47, not to report while under the influence of alcohol; General Order 4, emergency equipment not to be used when an unauthorized person is in the car; General Order 17–D, audible and visual signals required when pursuing a fleeing vehicle; Reserve Directive R–85–5, privately owned vehicles to be authorized for use as police vehicles and must be insured; and he had an injured foot which was supposed to be in a walking cast.

However, the evidence also shows departmental policy R–85–10 allowed a reserve agent to put himself on duty:

> Reserve personnel, while not on active scheduled duty with the Department, have only the authority vested by law of a citizen and shall not normally go to the scene of any incident, emergency or investigation without being property [sic] dispatched. *If circumstances, however, seem to warrant doing so, the deputy will notify Communications Central of their intentions via radio or public service.* Notification should be immediate or as soon as possible, after the incident.

(Emphasis added.)

Skeen testified he put himself on duty because, "It just hit me wrong, and I thought that he needed to be stopped by the proper authorities, and we needed to find out why he was driving like that. He needed to be taken off the road. He was unsafe."

Deputy Donald Womack, a former captain in the Harris County Sheriff's reserves, testified Skeen was properly certified by the State Commission on Law Enforcement. Because Skeen was certified, he could do anything a regular deputy could do, such as, he could place himself on duty, conduct investigations, and make arrests that carry the same force and effect as those made by regular deputies.

Chief Ray Vickers, chief of the reserves of the Harris County Sheriff's Department, testified that a reserve deputy, if the circumstances warrant, may place himself in the line of duty. Under the department's policy, a reserve deputy who enters into fresh pursuit need not have grounds for an arrest in order to enter into the pursuit.

Lieutenant Paul Michael Orlando testified that under the departmental policy governing fresh pursuit, a reserve deputy must draw together his total training and experience, and in his judgment decide which regulations could be ignored or disregarded before entering into fresh pursuit. Orlando was aware that Skeen had used his private vehicle to patrol for the Harris County Sheriff's Department in the past.

Officer R.K. Lyon was a police officer and director of the Pasadena Regional Crime Laboratory in Pasadena. He examined the Kojak light taken from Skeen's car after the collision and determined that the light was on at the time of the collision.

In light of the evidence that Skeen had five years experience as a reserve deputy sheriff and was considered a good reserve deputy sheriff, that on the night of the accident Skeen had all the "badges" of a reserve deputy who could put himself on duty and was following departmental policy to notify Communications Central by radio when the accident occurred, we cannot say the jury's finding that Skeen was acting in the scope of his employment was manifestly unjust.

Point of error five is overruled.

In point of error six, Harris County asserts there was no evidence, or alternatively insufficient evidence to support the jury's failure to find that Skeen acted "intentional/grossly negligent." Harris County argues Skeen committed an intentional act for which it is immune because "Skeen did cause his vehicle to collide with another vehicle occupied by Lila Jean Dillard, recklessly causing the death of Lila Dillard by reason of intoxication."

Harris County first references RESTATEMENT (SECOND) OF TORTS § 8(a) (1965) for the principle:

> [T]he unlawful and intentional invasion of one legally protected interest of another will supply the intent necessary to hold the actor liable for the unintended consequences of his act when some other legally protected interest of the victim is harmed in consequence of the Act.

Harris County then relies on *Department of Mental Health v. Crawford,* 771 S.W.2d 624 (Tex.App.—Dallas 1989, writ denied), for the proposition that: "Government entities are not bound by unauthorized and/or intentional acts of employees." However, Harris County misquotes and takes this statement of law out of context.

In *Crawford,* the state of Texas sued a patient's estate to collect payments due for health care in the state hospital. The state

failed to properly bill the account, and the defendant claimed waiver. The court held the defendant failed to prove official conduct by a state employee supporting an inference that the State intended to relinquish its right to reimbursement. We do not find *Crawford* applicable to this case.

■ Gross negligence is not defined in chapter 101 or 102 of the Texas Civil Practice and Remedies Code. It is, however, defined in chapter 41 entitled "EXEMPLARY DAMAGES." " 'Gross negligence' means more than momentary thoughtlessness, inadvertence, or error of judgment. It means such an entire want of care as to establish that the act or omission was the result of conscious indifference to the rights, safety, or welfare of the person affected." TEX.CIV.PRAC. & REM.CODE ANN. § 41.001(5) (Vernon Supp.1992) (effective Sept. 2, 1987, which codified the definition pronounced in *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 920 (Tex.1981)). The test for gross negligence is both an objective and a subjective test. *Williams v. Steves Indus., Inc.*, 699 S.W.2d 570, 573 (Tex. 1985). Gross negligence may be proved by showing the defendant had actual subjective knowledge that his conduct created an extreme degree of risk. *Id.* Gross negligence may also be objectively proved by showing that under the surrounding circumstances a reasonable person would have realized that his conduct created an extreme degree of risk to the safety of others. *Id.* The character of the actual act required is determined by "conscious indifference," meaning, the defendant had "decided" to ignore the rights of others even in light of probable and threatened injury to them. *Id.*

A court of appeals may reverse and remand a case for a new trial when it concludes that the jury's "failure to find" is against the great weight and preponderance of the evidence. *Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, 651 (Tex. 1988).

Harris County claims the evidence shows Skeen committed an intentional act because Skeen was convicted of involuntary manslaughter by recklessly causing the death of Lila Dillard by reason of intoxication. Harris County asserts, "Skeen's recklessness placed Lila Dillard in such apprehension extends by operation of law to the specific additional injury which resulted in death, whether or not James Earl Skeen n [sic] fact intended that additional and subsequent harm." Harris County also points to evidence that Skeen had an injured foot for which he was still wearing a walking cast, although his foot was not in the cast the night of the accident; had violated department policies in pursuing a vehicle; admitted his actions were reckless that night; and was aware he was risking his passenger's life by pursuing a vehicle. Basically, Harris County argues Skeen was aware he was intoxicated, but opted to drive recklessly.

The evidence shows Skeen had five years of commendable experience as a reserve deputy sheriff, and in his judgment, put himself on duty to take a vehicle off the road. The accident occurred when, as Skeen steered his vehicle out of a bar ditch, it hit the roadway, went into a spin, and shot across four lanes. There is no evidence to show Skeen, as Harris County claims in its brief, intentionally caused the collision when he, "persisted in attempting to steer out of the ditch until he lost control of his vehicle," or "showed no inclination to avoid inflicting unnecessary harm upon innocent people." Skeen testified that although an intoxilyzer test showed he was legally intoxicated, he did not feel intoxicated physically or mentally while he was driving. He did not believe he was intoxicated when he took the intoxilyzer test. When asked if his actions were totally reckless the night of the accident, Skeen replied, "No, ma'ma, [sic] I do not feel like they were, but apparently it turned out that way. Like I say, it happened. It was bad timing." Skeen testified he did not intentionally kill or cause injury, or willfully cause the collision.

Because there is evidence Skeen did not act in conscious indifference, we do not conclude there was no evidence to support the jury's non-finding of gross negligence. Further, the jury is the sole judge of the

credibility of the witnesses and the weight to be given their testimony. *Herbert v. Herbert,* 754 S.W.2d 141, 144 (Tex.1988); *Moore v. State Farm Mut. Auto Ins. Co.,* 792 S.W.2d 818, 819 (Tex.App.—Houston [1st Dist.] 1990, no writ). In light of all the evidence, we hold the jury's non-finding of gross negligence was not clearly contrary to the evidence and manifestly unjust. *Herbert,* 754 S.W.2d at 144.

Points of error four and six are overruled.

The judgment is affirmed.