Martha Jane COLLINS, Appellant,

v.

The STATE of Texas, Appellee.

No. 15245.

Court of Civil Appeals of Texas,
San Antonio.

Feb. 6, 1973.

Rehearing Denied March 13, 1974.

294

Forrest A. Bennett, Bennett, Anderson & Leger, San Antonio, for appellant.

KLINGEMAN, Justice.

Appellant, Martha Jane Collins, as independent executrix of the estate of Ida Pyle Collins, appeals from a judgment that the state of Texas recover from appellant the sum of $10,215.09 for the support, maintenance and treatment of Ida Pyle Collins in the San Antonio State Chest Hospital and the San Antonio State Hospital. Trial was to the court without a jury. No findings of fact or conclusions of law were requested of or were filed by the trial court.

Although the State was the plaintiff in the trial court, this suit involved claims by two state hospitals for reimbursement for support, maintenance and treatment of Ida Pyle Collins over a period of approximately two years, commencing on or about March 14, 1968. One claim is by the San Antonio State Chest Hospital, formerly the San Antonio State Tuberculosis Hospital, in the amount of $7,871.36; and the other is the claim of the San Antonio State Hospital in the amount of $2,343.73. It is undisputed that Ida Pyle Collins is deceased and that Martha Jane Collins is independent executrix of her estate. The parties stipulated that the net value of the estate of

Mrs. Collins as of September, 1972, was $49,976 and that Mrs. Collins was possessed of such property during all the time she was in the hospital. The testimony shows that Mrs. Collins had tuberculosis during the time she was in the hospital. The parties will be sometimes herein referred ot as they were designated in the trial court.

Appellant asserts six points of error and states in her brief that the main questions here involved are the right of the State to maintain the suit, the right of appellee's counsel to appear in the suit, and the question of actual costs for the support, maintenance and treatment of Ida Pyle Collins. The State filed no brief in this appeal.

The pertinent parts of the applicable statutes are as follows. Article 3196a, Section 5, Vernon's Tex.Rev.Civ.Stat.Ann.:

"Upon the written request of the State Board of Control the County or District Attorney, or in case of the refusal or inability of both to act, the Attorney General, shall represent the State in filing a claim in Probate Court . . . wherein the guardian of such patient and/or other person legally liable for his support, may be cited to appear then and there to show cause why the State should not have judgment against him or them for the amount due it for the support, maintenance, and treatment of such patient; and upon sufficient showing, judgment may be entered against such guardian or other persons for the amount found to be due the State, which judgment may be enforced as in other cases. A verified account, sworn to by the superintendent of the respective hospitals or psychopathic hospitals wherein such patient is being treated or has been treated, as to the amount due shall be sufficient evidence to authorize the Court to render judgment therein."

Article 4477–11, Section 9(2)(b), Texas Tuberculosis Code, Tex.Rev.Civ.Stat.Ann.:

"Non-indigent public patients are those who possess some property out of which

the State may be reimbursed, or who have someone legally responsible for their support. This class shall be kept and maintained at the expense of the State . . . but in such case the State shall have the right to be reimbursed for the support of such patients . . . Such claim may be collected by suit or other proceedings in the name of the State of Texas by the County or District Attorney of the county from which said patient is sent or the Attorney General against such patient or his guardian. . . . Such suit shall be instituted upon the written request of the head of the State tuberculosis hospital accompanied by a certificate as to the amount due the State, which in no case shall exceed the actual cost of maintaining and treating such patient. In all suits or proceedings, the certificate of the head of the hospital shall be sufficient evidence of the amount due the State for the support of such patient."

■ Appellant's first point of error is that the trial court erred in granting judgment to the plaintiff because neither the State Board of Control, the superintendent of the San Antonio State Hospital, nor the superintendent of the San Antonio State Chest Hospital requested the District Attorney of Bexar County, Texas, to file suit prior to the filing of such suit. Appellant relies on the provisions of Article 3196a, Section 5, supra.[1] We find nothing in such statute which prohibits the Attorney General from representing the State in such matter. Moreover, there is testimony by the superintendent of the San Antonio State Chest Hospital that he had requested the District Attorney of Bexar County to file suit, although his testimony is somewhat equivocal in this regard. The defendant introduced into evidence a letter from the counselor for the legal claims division

of the Texas Department of Mental Health to the Hon. Ted Butler, District Attorney of Bexar County, dated November 13, 1972, in which he requested the District Attorney to represent the State in such cause, which letter is dated after the filing of the petition herein, but prior to the trial here involved. District Attorney Ted Butler made this notation on the letter, "I respectfully yield to the Attorney General representing the State of Texas in said cause." The fact that this letter was sent does not prove that the superintendent of the San Antonio State Chest Hospital did not also make a request. There is some testimony in the record that he did make such request.

Appellant does not discuss Article 4477–11, Section 9(2)(b), supra, which statute specifically authorizes the Attorney General to represent the State.[2] Plaintiff's petition states that its cause of action is instituted under the authority of Article 4477–11, Section 9(2)(b), and Article 3196a, Section 5. Appellant's first point of error is without merit and is overruled.

■ By her second point of error, appellant complains that the trial court erred in permitting plaintiff's counsel to appear in this case and represent the State. Plaintiff's petition shows its counsel to be Crawford C. Martin, Attorney General of Texas, by Robert H. Hyatt, Special Assistant Attorney General; John Hardage, Legal Counselor for the Texas Department of Mental Health and Mental Retardation; and Philip L. Spies, Legal Consultant for the Texas State Department of Health. Rule 12, Texas Rules of Civil Procedure, provides in part: "Any defendant in any suit or proceeding pending in any court of this state may, by sworn written motion stating that such defendant believes that such suit or proceeding was instituted against him or is being prosecuted against

1. "Upon the written request of the State Board of Control the County or District Attorney, or in there case of the refusal or inability of both to act, the Attorney General, shall represent the State in filing a claim in Probate Court . . . ."

2. "Such claim may be collected by suit or other proceedings in the name of the State of Texas by the County or District Attorney of the county from which said patient is sent or the Attorney General against such patient or his guardian . . . ."

him without authority on the part of the plaintiff's attorney, cause such attorney to be cited to appear before such court and show his authority for same, notice of which motion shall be served upon such attorney at least ten days before the trial of such motion." No such motion was filed by the defendant. In addition, defendant's attorney entered into stipulations with plaintiff's attorneys, and participated in several hearings with such attorneys, including a motion to set aside a previous judgment, which was granted, and a hearing on a motion for summary judgment for the State, which was denied. Appellant's second point of error is overruled.

■ By her fourth point of error, appellant complains that the trial court erred in granting judgment for appellee because appellee failed to properly present a sworn account on behalf of the San Antonio State Hospital or the San Antonio State Chest Hospital, in that the jurat is a mere acknowledgement and is not subscribed and sworn to by the superintendent. The claim of the San Antonio State Hospital is properly subscribed to by the superintendent of the San Antonio State Hospital, Dr. J. G. Cocke, and there is attached to such claim an affidavit by such superintendent that such claim is within his knowledge just and true; that it is due; that all just and lawful offsets, payments and credits have been allowed; and that such affiant is cognizant of the facts contained in such affidavit. Such affidavit is properly sworn to before a notary public.

The claim of the San Antonio State Chest Hospital contains a certificate by Dr. R. M. Inglis, superintendent of such hospital,[3] that it is a true and correct statement of hospitalization charges, less payments made to the account of Ida Pyle Collins for the period of time from March 14, 1968, to March 16, 1970. Such claim contains a statutory acknowledgement of Dr. Inglis. Article 4477–11, Section 9(2)(b), specifically provides that in suits for reimbursement for support of patients, the certificate of the head of the hospital shall be sufficient evidence of the amount due.[4] There is no provision in such statute that such claim shall be sworn to. Appellant's fourth point of error is overruled.

By her fifth point of error, appellant asserts that appellee failed to show the actual cost for the support, maintenance and treatment of Ida Pyle Collins.

■■ It is clear that the right of the State to recover the cost of support, maintenance and treatment of a patient is the right of reimbursement, and is the actual cost to the State of such support, maintenance and treatment. Green v. State, 272 S.W.2d 133 (Tex.Civ.App.—Beaumont 1954, writ ref'd n. r. e.). The testimony in the record pertaining to the support, maintenance and treatment of Mrs. Collins consists of the claim of the San Antonio State Chest Hospital; the claim of the San Antonio State Hospital; an exhibit prepared by Mrs. Gracie P. Campbell, the data processing supervisor of the San Antonio State Chest Hospital, which was introduced into evidence as defendant's exhibit No. 2; the testimony of Dr. Inglis; the testimony of Mrs. Campbell; and the testimony of Mr. Robert D. Thornton, the claims officer of

---

3. 14 C.J.S. Certificate p. 111:
"A certificate in its most general and widest sense has been defined as meaning a certain assurance of that which it states; a declaration in writing; an authoritative attestation; a writing giving assurance that a thing has or has not been done, that a fact exists or does not exist; a written testimony to the truth of any fact; the usual and customary method to indicate what has or has not been done.
        *        *        *        *        *
"Strictly speaking, a certificate by a public officer may be said to be a statement writ-

ten and signed, but not necessarily nor usually sworn to, which is by law made evidence of the truth of the facts stated for all or for certain purposes."

4. Such suit shall be instituted upon written request of the head of the State tuberculosis hospital accompanied by a certificate as to the amount due to the State, which in no case shall exceed the actual cost of maintaining and treating such patient. In all suits, the certificate of the head of the hospital shall be sufficient evidence of the amount due.

the San Antonio State Hospital. We have hereinbefore discussed the two claims.

Dr. Inglis, the superintendent of the San Antonio State Chest Hospital, testified in considerable detail as to the claim of such hospital. He testified that he was in charge of such hospital and was familiar with its operations; that Mrs. Collins had tuberculosis; that the charges shown in its claim included the patient's daily room charge, the daily physician's charge, the X-ray services, the laboratory services, and the drug services; and that such claim shows the number of days Mrs. Collins was in the hospital, the daily cost, the monthly cost, the total charges, and the payments and credits to such account. Such claim shows a total charge of $11,453.05, credits of $1,770.39, $797.90 and $1,013.40, with a balance remaining due of $7,871.36. Such claim shows the daily cost to range from a low of $15.35 to a high of $20.44. Dr. Inglis testified that the cost of medicines, X-ray services, and laboratory and drug services can be exactly computed, and that the daily room cost is the actual cost of operating that room for that particular patient, but that such costs include the proportionate part of total operating costs of the hospital, including lights, gas, water, heating, nursing services and janitorial services.

Mrs. Gracie P. Campbell testified that she is the data processing supervisor of the San Antonio State Chest Hospital; and that she prepared the exhibit introduced as defendant's exhibit No. 2, and which is a breakdown of the hospitalization charges of Mrs. Ida Pyle Collins. Such exhibit shows the number of days Mrs. Collins was in the hospital, the daily room charge, the monthly room charge, the daily physician's charge, the monthly physician's charge, the monthly X-ray charges, the monthly laboratory charges, the monthly drug charges, total charges for the month, and the total hospitalization charge. The total charge shown is $11,453.05, the same amount as shown in the claim of the San Antonio State Chest Hospital. Mrs. Campbell testified that such charges are the total cost of maintaining Mrs. Collins for the period covered; that the drug charges, physician's charges, X-ray charges and laboratory charges are the actual cost to the hospital; that the room charge is the daily cost of that particular bed for that particular patient; and that such charges are based on the actual cost of operation of the hospital monthly, divided by the number of days, and by the number of patients.

Dr. Cocke, the superintendent of the San Antonio State Hospital, the affiant on the claim of this hospital, did not testify. Mr. Robert D. Thornton, the claims officer for the hospital, testified that he prepared such claim; and that such claim showed charges of $3,810.93, with credits of $1,467.20, leaving a balance owing of $2,343.73. Such claim shows the period of hospitalization and the monthly charges. Mr. Thornton testified that such charges were calculated by him, but were established by the Board in Austin, and that he accepted them as they were provided; that they were the reimbursable, established and fixed rates of the Board, and that he prepared the claim based on the established rate; and that there is no way that he personally could break down such charges or determine the actual cost, but that the Board knows the actual cost.

Although appellant questions the method of computing the cost. There is no evidence in the record that the cost shown in such claims exceeds the cost to the State.[5]

5. In Winchester v. State, 352 S.W.2d 491 (Tex.Civ.App.—Eastland 1961, no writ), it was held that a guardian who was sued for the costs of maintaining an inmate in the state hospital, had the burden of rebutting the presumption arising from the superintendent's affidavit as to the amount due by introducing evidence that the State's charges exceeded the cost to the State, and that a verified account sworn to by the superintendent of the state hospital supported judgment against the estate of a hospital inmate for the amount due for support, maintenance and treatment in the absence of evidence in rebuttal to show the amount claimed was more than the cost to the State.

The trial court impliedly found that the State's actual cost of support, maintenance and treatment of Ida Pyle Collins was $10,215.09. The authenticated claims of the superintendent of the San Antonio State Chest Hospital and the superintendent of the San Antonio State Hospital, together with the testimony in the record, sufficiently support such finding.

 We next consider appellant's third point of error that the trial court was prejudiced and biased against appellant and should have disqualified itself for the reason that appellant could not get a fair trial due to such prejudice. We have carefully examined the entire record, and there is nothing whatsoever in the record to show that the trial court was prejudiced or biased in any manner, and this point is overruled.

■ Appellant's last point of error is that the trial court erred in granting a judgment for the State because it failed to file a claim as required by law; and after such claim was filed, did not file suit within 90 days after the alleged claim had not been acted upon, contrary to statute. Appellant relies on the provision of Section 313 of the Texas Probate Code which provides that when a claim has been rejected by the representative, the claimant must institute suit within 90 days after such rejection or the claim will be barred. Prior to the adoption of the Texas Probate Code, the Supreme Court had repeatedly held that the general provisions for establishing claims against an estate were not applicable to an estate administered by an independent executor. Galvin, Wills and Trusts, Administration of Estates, 23 Sw.Law J. 18, 27 (1969). In Pearson v. Bunting, 423 S.W.2d 177 (Tex.Civ.App.— Amarillo 1967), the Court of Civil Appeals held that the Probate Code changed this result and that a claim not acted on by an independent executor within 30 days must be considered rejected, and a claimant would have 90 days within which to file suit, otherwise the claim was barred.

The Supreme Court, 430 S.W.2d 470 (1968), reversed the Court of Civil Appeals and construed the applicable statutes of the Probate Code as effecting no change with regard to claims in an independent administration and affirmed the trial court's judgment permitting recovery against an independent executor in a suit commenced more than 90 days after the claim was rejected. Under authority of this Supreme Court ruling, we overrule appellant's sixth point of error.

All of appellant's points of error have been considered, and all are overruled. The judgment of the trial court is affirmed.