**John F. GRAZIADEI, et. al., Appellant,**

**v.**

**D.D.R. MACHINE CO., INC., Appellee.**

**No. 05–86–01218–CV.**

Court of Appeals of Texas,
Dallas.

Oct. 19, 1987.

Rehearing Denied Nov. 18, 1987.

---

**2.** Edwards' 21 other points of error are treated     separately in an unpublished opinion.

Thomas V. Murto, III and Edwin E. Wright, III, Dallas, and R. Gary Stephens, Houston, for appellant.

Joseph W. Stewart, Arlington, for appellee.

Before STEPHENS, STEWART and BAKER, JJ.

BAKER, Justice.

John and Brenda Graziadei appeal from a take nothing judgment in favor of D.D.R. Machine Co., Inc. In two points of error, the Graziadeis contend that the trial court erred by failing to grant them a judgment non obstante veredicto because as a matter of law, D.D.R. had participated in placing a defectively designed product in the stream of commerce, or alternatively, as a matter of law, D.D.R. sold the defectively designed product. We disagree and affirm the trial court's judgment.

The Graziadeis' suit was for personal injuries after John Graziadei was struck by defectively packaged cast iron wheel hubs which flew off a tractor-trailer on which they were being transported. The defendants were Village Company Inc., Quality Trailer Products Inc., Kennith Lee Thompson, and the appellee D.D.R. Machine Co. Inc. The Graziadeis asserted that D.D.R. was liable to them on an ordinary negligence theory or alternatively under strict liability. Although the jury found, in answer to special issues, that the product was defectively designed, and was a producing cause of John Graziadei's injury, the jury declined to find that D.D.R. or its employees had been negligent. The jury did find that Village, the manufacturer and original seller of the defectively packaged product, was negligent and rendered judgment against it for damages in excess of one million dollars. Before trial, the Graziadeis had settled with Quality. The jury also declined to find, in answer to special issue number one, that D.D.R. sold the defectively designed product in question. The Graziadeis moved the court to disregard the jury's answer to special issue number one, and to grant them a judgment n.o.v. against D.D.R. on the theory of strict liability. The court refused and entered the take nothing judgment in favor of D.D.R.

### Statement of the Facts

On September 18, 1984, at least three twelve-inch wheel hubs came off a Quality Trailer Products Inc., flat-bed trailer on which they were being transported westbound on Interstate Highway 30 in Dallas County. The Quality Trailer was driven by Kennith Thompson, its employee. The hubs bounced across the median and struck the Graziadeis pickup that was travelling in the opposite direction. Both of the Graziadeis sustained personal injuries, but John Graziadei's injuries were the more severe. The three hubs came out of a wooden pallet originally containing ninety hubs. The wheel hubs were manufactured and packaged onto this pallet by Village Products Inc., who was in the business of manufacturing this type of truck equipment. Quality had purchased the hubs on the pallet from Village. After the purchase, Quality needed a place to store the hubs, and contacted D.D.R. and asked D.D.R. if it had space available in its warehouse for storage. D.D.R. agreed to store the hubs as an accommodation to Quality. This agreement was reached sometime in the middle of August 1984. D.D.R. did not do anything to the pallet of hubs other than retain it in the warehouse until September 18, 1984, when Quality came and retrieved it.

When Quality delivered the pallet of hubs to D.D.R., it invoiced D.D.R. for the hubs and D.D.R. paid the invoice in its regular course of business. Quality picked

up the pallet of hubs on September 18th. Subsequently, after D.D.R. invoiced Quality, Quality paid D.D.R. for these hubs in a consolidated payment of several invoices.

The nature of the transaction between Quality and D.D.R. was disputed at trial. The Graziadeis contended that the transaction was a sale. D.D.R. contended that the transaction was nothing more than an accommodation bailment for the benefit of Quality. Gary Clay, Quality's accountant, testified that no sale had taken place, despite the exchange of invoices. He testified that Quality issued invoices so it could track its inventory, and that Quality even issued invoices when it transferred its goods from one of its own warehouses to another. He further testified that Quality expected to get the pallets of hubs back from D.D.R. and that D.D.R. was not free to dispose of them. D.D.R.'s witnesses also testified that Quality had never offered to sell the pallets of hubs to D.D.R. before they were accepted for storage, and that the invoices between the parties did not include any profit. The Graziadeis characterized Clay's testimony as evidencing a sale, and claimed that, after Quality invoiced the hubs to D.D.R., but before the hubs were picked up by Quality in September, the hubs belonged to D.D.R. who was free to sell them to third parties. Both Quality and D.D.R. admitted that each in turn had paid the invoice of the other.

On the Graziadeis' strict liability theory, special issue number one was submitted to find whether D.D.R. sold the defective pallet of twelve-inch hubs in question. The jury answered this issue in the negative. The trial court refused to grant the Graziadeis' motion to disregard the jury's answer and to grant them a judgment n.o.v. against D.D.R.

### D.D.R. Sold as a Matter of Law

■ In point of error number two, the Graziadeis contend that the trial court erred by failing to grant judgment n.o.v. to them because, as a matter of law, D.D.R. sold the defectively designed pallet of twelve-inch wheel hubs. The Restatement (Second) of Torts § 402A (1965) states that a "seller of a product in a defective condition, unreasonably dangerous to the user ... is subject to liability for physical harm ... caused to the user if (a) the seller is engaged in the business of selling such a product, and, (b) it is expected to and does reach the user without substantial change in the condition in which it is sold." This statement of strict liability has been adopted as the rule in Texas. *Darryl v. Ford Motor Co.*, 440 S.W.2d 630 (Tex. 1969). The rule applies to unreasonably dangerous products whether the defect occurred in production or design. *Rourke v. Garza*, 530 S.W.2d 794, 798 (Tex.1976).

The Graziadeis contend that the September 18, 1984, delivery of the defective pallet of hubs by D.D.R. to Quality was a sale, as a matter of law, and not merely a return of stored property. The Graziadeis rely on *Fuller v. Texas Western Financial Corp.*, 635 S.W.2d 787 (Tex.App.—Tyler), *writ ref'd n.r.e.*, 644 S.W.2d 442 (Tex.1982), as the sole authority for their position that the transaction was a sale as a matter of law. The Graziadeis contend that in *Fuller* the Texas Supreme Court held that invoices in and of themselves establish a sale as a matter of law, and therefore, because invoices are involved in this case the transaction in question is a sale as a matter of law. A close and careful reading of the court of appeals opinion in the *Fuller* Case together with the Texas Supreme Court decision reveals that *Fuller* is readily distinguishable, and in fact is inapposite.

In *Fuller*, Texas Western sued Fuller for payment of certain goods alleging it was the assignee of Amcrest Textiles Inc., the original seller of the goods to Fuller. Fuller generally denied these allegations, and pleaded that he only did business with Amcrest on a consignment basis. The jury found in favor of Texas Western on a portion of the account and further found that Fuller received the Amcrest goods on consignment. The trial court rendered judgment in favor of Texas Western on the account. On appeal, Fuller contended that the finding of a consignment agreement defeated Texas Western's cause of action against him, and argued that the goods were not sold or leased, but instead were

placed with him on the consignment agreement with Amcrest. The Tyler Court of Appeals held that the transaction was a sale as a matter of law under articles 2.326(c) and 2.327(b)(1), (2) of the Texas Business and Commerce Code and therefore, title passed to Fuller. The court stated that neither Fuller's invoice exhibit listing the percentage of the sale price retained by him, nor the Texas Western invoice exhibits listing percentages constituted a consignment. This court quoted from Texas Jurisprudence on Sales that under the Uniform Commercial Code, many transactions that might have been regarded as consignments under former law will be regarded as sales under the code, because the code provides that, where goods are delivered to a person for sale, and he maintains a place of business where he deals in goods of the kind involved, under a name other than that of the person making delivery, the goods are deemed to be on sale or return, as regards claims of creditors of the person conducting the business. *See* TEX.BUS. & COM.CODE ANN. art. 2.326(c) (Vernon Supp.1977). The Tyler Court concluded that the facts constituted a sale or return, and that the jury's finding that there was a consignment agreement was properly disregarded by the trial court. On motion for rehearing, Fuller argued that article 2.326(c) of the code applies only to creditors of the person conducting the business, and that Texas Western was never a creditor of Fuller. It was Fuller's contention that article 2.326(c) did not apply, and therefore, the transaction was not a sale as a matter of law. The Tyler Court held that since Texas Western held Fuller's accounts by virtue of an assignment from Amcrest, and had filed a financing statement complying with the code provisions, it was therefore a secured creditor as defined in article 1.201(12) of the code and therefore Texas Western was within the definition of "creditor" under article 2.326(c). Texas Western's judgment was affirmed by the court.

On appeal to the Texas Supreme Court, that Court held, in a per curiam opinion [644 S.W.2d 442 (Tex.1982) ], that it agreed with both the trial court and the Court of Appeals that the delivery of goods to Fuller was a sale as a matter of law and not a consignment. The Supreme Court also held, however, that section 2.326(c) of the Texas Business and Commerce Code does not apply to transactions between original contracting parties or their assignees, and the language of that section indicates that the intent of the parties is to be disregarded only when the rights of third-party creditors intervene, referring to comment 2. The Supreme Court then stated that as between the original parties the proper focus is on subdivision (a) of section 2.326, and the trial court should determine from any agreement between the parties whether a sale or return was intended or whether the parties unequivocally "otherwise agreed" to create a consignment.

▮▮▮ Thus, we hold that the intent of the parties may only be disregarded when the rights of third-party creditors intervene. At oral argument, the Graziadeis conceded that they were not a creditor of D.D.R., as defined by the Texas Business and Commerce Code article 1.201(12). Therefore, in this case the nature of the transaction between D.D.R. and Quality was a question of fact, based upon the intent the parties, and not a matter of law as contended by the Graziadeis, and we so hold.

▮▮▮ The Graziadeis assert that the trial court should have disregarded the jury's answer to the issue and granted them a judgment n.o.v. In order to sustain a motion for judgment n.o.v., a trial court must determine that there is no evidence having probative force upon which the jury could have made the findings relied on. *Trenholm v. Ratcliff*, 646 S.W.2d 927, 931 (Tex. 1983). In acting on such a motion, all testimony must be viewed in a light most favorable to the party against whom the judgment is sought, and every reasonable intendment deducible from the evidence is to be indulged in that party's favor. *Trenholm*, 646 S.W.2d at 931. A judgment n.o.v. is not proper when a directed verdict could not have been properly granted. *Dodd v. Texas Farm Products Co.*, 576 S.W.2d 812 (Tex.1979). For a trial court to

instruct a verdict when a material issue is raised by evidence is error. A test of whether an instructed verdict is proper is whether reasonable minds may differ as to the truth of controlling facts. If reasonable minds may differ, the jury must decide the issue. *Collora v. Navarro*, 574 S.W.2d 65 (Tex.1978). There being a conflict in the testimony, the trial court properly submitted the sale issue to the jury. Where the issue has support in the evidence, the trial judge may not render judgment n.o.v. even though the great weight and preponderance of the evidence may be to the contrary. *Gulf, Colorado & Santa Fe Railroad v. Deen*, 158 Tex. 466, 312 S.W.2d 933 (1958), *cert. denied*, 358 U.S. 874, 79 S.Ct. 111, 3 L.Ed.2d 105 (1958). The appellant's point of error is a "no evidence" point, and on appeal our standard is the same as that of the trial court; that is, we must consider only the evidence and inferences tending to support the jury's finding and disregard all the evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). We conclude that there was sufficient probative evidence to raise a fact issue as to whether the transaction between D.D.R. and Quality was a sale. The jury declined to find that it was a sale and the trial court may not properly disregard a jury's negative finding and substitute its own affirmative finding unless the evidence conclusively establishes such an affirmative finding. *Bond v. Otis Elevator Co.*, 388 S.W.2d 681, 685 (Tex.1965). *See also C. & R. Transport Inc. v. Campbell*, 406 S.W.2d 191 (Tex.1966); *Middleton v. Palmer*, 601 S.W.2d 759 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.). The evidence does not conclusively establish an affirmative finding in this case. Point number two is overruled.

### Stream of Commerce as a Matter of Law

In their first point the Graziadeis contend that the court erred by failing to grant them a judgment n.o.v. because, as a matter of law, D.D.R. had participated in placing the defectively designed pallet in the stream of commerce. The Graziadeis assert that the failure of the jury to find in their favor with regard to the "sale" is not material to D.D.R.'s liability because in Texas it is not necessary that a defendant actually sell the defective product. He needs only to be engaged in the business of introducing the product into the channels of commerce. The Graziadeis argue that there is no dispute that the defective pallet was in the channel of commerce, and from that premise contend that D.D.R. actually participated in the defective pallet being placed in the stream of commerce. The Graziadeis use their "sale" as a matter of law argument to conclude that D.D.R. participated in placing the defective pallet of hubs in the stream of commerce. However, since special issue number one on the "sale" was adverse to them and, if as they say, that answer is immaterial, then they need some basis other than a sale to support their strict liability theory on the part of D.D.R. The Graziadeis rely on the Texas Supreme Court's interpretations of section 402A of the Restatement (Second) of Torts which hold that it is only necessary that a defendant be engaged in the business of introducing the product into the channels of commerce. *See Rourke v. Garza* 530 S.W.2d 794, 800 (Tex.1976); *Armstrong Rubber Co. v. Urquidez*, 570 S.W.2d 374, 375 (Tex.1978).

The Graziadeis' statement of the law in Texas is correct, but it offers them no solace in the instant case. As with the issue of "sale," the issue of whether D.D.R. was engaged in the business of introducing the product into the channels of commerce was disputed by D.D.R. Accordingly, the evidence on this factual issue was in conflict. As previously stated, the test for an instructed verdict is whether reasonable minds may differ as to the truth of controlling facts. If reasonable minds may differ, then the jury must decide the issue. *Collora v. Navarro*, supra. If there was a material issue raised by the evidence, it was incumbent on the Graziadeis to secure a favorable finding from the jury on this issue. The record reflects that they did not request an issue nor did they object to the trial court's failure to submit such an issue. Since no issue was submitted relating to

this factual determination on strict liability, and no objection was made to the trial court's failure to submit such an issue, the Graziadeis therefore waived such a finding. Rule 279, TEX.R.CIV.PROC.; *State v. Harrington*, 407 S.W.2d 467, 479 (Tex. 1966). *See also Hopkins v. Standard Fire Ins. Co.*, 554 S.W.2d 270, 272 (Tex.Civ.App. —Houston [1st Dist.] 1977, no writ). Under the circumstances we must presume that the trial judge resolved the question in a manner which would support the judgment. *Strauss v. La Mark*, 366 S.W.2d 555, 557 (Tex.1963). Point of error number two is overruled.

The trial court judgment is affirmed.