**The STATE of Texas, acting By and Through the TEXAS DEPARTMENT OF MENTAL HEALTH & MENTAL RETARDATION, Appellant,**

v.

**Norma Pruitt CRAWFORD, Independent Executrix of Estate of Cleo M. Fowler, Appellee.**

**No. 05–88–00645–CV.**

Court of Appeals of Texas, Dallas.

May 8, 1989.

Rehearing Denied June 14, 1989.

Virgil A. Lowrie, Denton, Don Harris, Austin, Thomas F. Keever, Dallas, for appellant.

Jon R. Boyd, Mesquite, for appellee.

Before STEWART, ROWE and BURNETT, JJ.

STEWART, Justice.

The State of Texas appeals a take-nothing judgment in its suit under article 3196a of the Texas Revised Civil Statutes to recover reimbursement for its costs of support, maintenance, and treatment furnished to Cleo M. Fowler, deceased, while she was a patient at Terrell State Hospital. The defendant is the independent executrix of the patient's estate. The State urges twenty-five points of error. We agree with the State's thirteenth and sixteenth points. Because our disposition of these two points is dispositive of this appeal, we need not address the State's other points. *See* TEX. R.APP.P. 90(a). We reverse the trial court's judgment and render judgment for the State.

Before addressing the merits of this appeal, we examine the nature of this statutory cause of action. Article 3196a, upon which this suit is based, gives the State a right to sue for reimbursement for the support, maintenance, and treatment of nonindigent patients admitted to State hospitals under the control of the Texas Department of Mental Health and Mental Retardation. TEX.REV.CIV.STAT.ANN. art. 3196a, § 1 (Vernon Supp.1989). In question number one the jury found that Fowler was a nonindigent patient as that term is defined in this article. *Id.* Neither party has attacked this finding. Section 5 of article 3196a provides that "a verified account, sworn to by the superintendent or director of the respective hospitals wherein such patient is being treated, or has been treated, as to the amount due shall be sufficient evidence to authorize the Court to render judgment therein." The State is entitled only to recover the actual costs it has incurred on behalf of the patient. *Rees v. State*, 286 S.W.2d 319, 320 (Tex.Civ.App.—San Antonio 1956, writ ref'd). However, the State is entitled to judgment for the amount sworn to by the superintendent as the "amount due" *unless* the defendant introduces evidence in rebuttal to show that the amount claimed is more than it cost the State. *Winchester v. State*, 352 S.W.2d 491, 492 (Tex.Civ.App.—Eastland 1961, no writ). In other words, article 3196a, section 5, places on the defendant the burden of rebutting the presumption arising from the superintendent's affidavit as to the "amount due" by introducing evidence that the State's charges exceeded the cost to the State. *Id.* With these principles in mind, we turn to the relevant facts of this case.

In 1979, Norma Pruitt was appointed guardian of the estate of her mother, Cleo M. Fowler, a person of unsound mind. Norma Pruitt later remarried and is now known as Norma Pruitt Crawford. After Fowler died in March 1985, Crawford was appointed independent executrix of her mother's estate. Fowler was admitted to Terrell State Hospital on three separate

occasions: from May 30, 1972, to August 24, 1972; from May 30, 1979, to January 31, 1980; and from July 11, 1984, to September 28, 1984.

The evidence regarding the 1972 confinement is that contained in the hospital superintendent's verified statement, giving the dates of admission and discharge and the cost to the State, and Crawford's testimony confirming the 1972 admission but stating that she had nothing to do with that hospitalization of her mother. There is no evidence that the State ever billed anyone for costs of the 1972 admission prior to the State's including those costs in its demand for payment in February 1986, as detailed below.

Crawford also testified that she made payments on her mother's account of $400 per month, totalling some $2000, during the 1979–80 hospitalization and that she received statements from the hospital demanding "that portion" every month. She stated that these statements did not indicate that anything was owed for 1972.

The record further reflects that the State first sent statements to Crawford for Fowler's 1984 hospitalization in September 1984. These bills reflected charges only for the 1984 admission. From February 25, 1985, to as late as November 18, 1985, the State billed Crawford for a balance of $800 for that admission. However, in September 1985, the hospital claims officer referred the delinquent 1984 account to a Texas Department of Mental Health and Mental Retardation claims attorney for collection. After a complete review of Fowler's records, the attorney wrote a letter to Crawford in February 1986, enclosing a statement consisting of an itemized list of charges, payments, and credits covering all three of Fowler's admissions to the hospital and stating a balance due as of September 28, 1984, of $18,269.70. When Crawford failed to pay this amount, the State filed suit under article 3196a.

Crawford's original answer included a general denial and a sworn denial of the account, but her first amended original answer did not include a sworn denial of the account. Instead, in her amended answer,

she alleged a general denial and affirmative defenses of statute of limitations, laches, statute of frauds, and waiver. In answer to the three questions submitted, the jury found that Fowler possessed property from which the State could be reimbursed during all the periods that she was a patient at the hospital; that the only amount due the State for Fowler's support, maintenance, and treatment during the three admissions was $800 incurred from September 1 through September 28, 1984; and that the State had not waived its right to sue for monies due for the 1984 admission but that it had waived its right to sue for the 1972 and the 1979–80 admissions.

Pursuant to the parties' stipulation that the court would determine the payments and credits to be applied against any sum of money awarded by the jury, the court found that the payments and credits applicable to the September 1–28 period exceeded the $800 found due by the jury. Accordingly, the court entered a judgment that the State take nothing and that Crawford have judgment for her costs, with execution against the State.

In its point of error thirteen, the State contends that the trial court erred in failing to disregard the jury's answers to question number two and in denying its motion for judgment *non obstante veredicto* (hereinafter "judgment n.o.v."), because there was no evidence in rebuttal to show that the amount of the claim as set out in the superintendent's affidavit was more than it actually cost the State. The jury's answer to a jury question may be disregarded only when it has no support in the evidence or when it is immaterial. TEX.R.CIV.P. 301; *Strickland Transp. Co. v. Womack,* 536 S.W.2d 391, 393 (Tex.Civ.App.—Dallas 1976, writ ref'd n.r.e.). A judgment n.o.v. is proper where a directed verdict would have been proper. TEX.R.CIV.P. 301. To sustain a directed verdict or a motion for judgment n.o.v., a trial court must determine that there is no evidence having probative force to support the jury's findings. *Graziadei v. D.D.R. Mach. Co.,* 740 S.W.2d 52, 55 (Tex.App.—Dallas 1987, writ denied). In acting on such a motion, the trial court

must view all evidence in the light most favorable to the party against whom the judgment is sought and indulge every reasonable intendment deducible from the evidence in that party's favor. *Id.* Thus, the State's complaints of the trial court's failure to disregard the jury's answers and its failure to grant the State's motion for judgment n.o.v. are "no evidence" points, and we, too, must consider only the evidence and inferences tending to support the jury's findings and disregard all evidence and inferences to the contrary. *Id.* (citing *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965)).

The State's thirteenth point is directed to the jury's answers to question number two which states:

> Without considering the payments or credits made to the account of Cleo Mildred Fowler, what do you find, from a preponderance of the evidence, to be the amount due to the State for its costs of providing support, maintenance, and treatment for Cleo Mildred Fowler during the following periods of time:

Answer in dollars and cents:     Amount

| | | |
|---|---|---|
| a. | May 30, 1972—August 25, 1972 | –0– |
| b. | May 30, 1979—August 31, 1979 [1] | –0– |
| c. | September 1, 1979—January 31, 1980 | –0– |
| d. | July 11, 1984—August 31, 1984 | –0– |
| e. | September 1, 1984—September 28, 1984 | $800.00 |

The State contends that the only evidence produced as to the State's costs for these various periods of time is that contained in the verified claim signed by the superintendent of Terrell State Hospital. That claim reflects costs for each period as follows:

| | | |
|---|---|---|
| a. | May 30, 1972—August 25, 1972 | $ 1,057.80 |
| b. | May 30, 1979—August 31, 1979 | 5,888.00 |
| c. | September 1, 1979—January 31, 1980 | 10,650.00 |
| d. | July 11, 1984—August 31, 1984 | $ 5,202.00 |
| e. | September 1, 1984—September 28, 1984 | 3,051.00 |
| | TOTAL | $25,848.80 |

The verified claim also reflects total credits of $7,579.10 (Medicare payments in 1979 and 1980 of $1,724.80, Medicare payments in 1984 of $3,229.30, and total payments from Crawford of $2,625), leaving a net balance due of $18,269.70, the amount for which the State sued.

Crawford responds that she filed a sworn denial of the accuracy of the State's account; therefore, the State had the burden of proof to establish the amount of its actual costs by a preponderance of the evidence and that it failed to sustain that burden because its evidence was inconsistent and unreliable. We disagree.

■ Crawford filed an amended original answer which was entire and complete in itself. This instrument was a substitute for her original answer, TEX.R.CIV.P. 64, which did contain a sworn denial of the State's claim, but her original answer is no longer regarded as a part of the pleadings in the cause. TEX.R.CIV.P. 65. Thus, Crawford had no sworn denial of the State's verified claim in her trial pleading because she failed to include it in her amended answer.

■ The statute provides that a verified account as to the amount due is sufficient evidence to authorize a judgment. TEX. REV.CIV.STAT.ANN. art. 3196a, § 5 (Vernon Supp.1989). Thus, the statute authorizes the State to file a suit on a sworn account. *Davis v. State,* 309 S.W.2d 482, 483 (Tex.Civ.App.—Texarkana 1957, writ ref'd n.r.e.). In addition, the force of the statute makes the verified claim admissible as evidence to prove the State's case in chief in the face of a sworn denial. *Id.* Consequently, even if Crawford's sworn denial were viable, the trial court's admission of the superintendent's verified claim as part of the State's case in chief would have

---

**1.** The 1979 and 1984 admissions were each divided into two separate periods as of September 1 of the respective years to correspond with the change in daily rates charged by the hospital beginning on that date. The State's fiscal year runs from September 1 through the following August 31.

been proper. *Id.* However, without a sworn denial, as here, the superintendent's verified claim is prima facie evidence of the amount due the State, and Crawford cannot deny the claim or any item therein. TEX.R.CIV.P. 185.

Crawford argues alternatively that she refuted the account with evidence to which the State did not object and, therefore, the issue of actual cost was tried by consent. We disagree. Although Crawford made some attempt to show that the claim was not based on actual costs, she failed to establish that fact. Likewise, she did not meet her burden of showing that the amounts sought in the superintendent's verified claim exceeded the actual costs incurred by the State. *Winchester,* 352 S.W.2d at 492.

The first rebuttal evidence that Crawford offered was through her cross-examination of Diana Barber, the hospital claims officer. Barber had testified on direct examination that she had prepared the statement of account attached to the superintendent's verified claim and that she had reviewed all of her records to determine that all of the credits on the statement were correct. On cross-examination, Barber testified that the daily rates shown on the statement were the flat rates for the time periods involved; that she consulted the rate schedules sent from the home office in Austin to obtain these rates; that these flat rates are established by department headquarters in Austin on a statewide basis; that, in determining the daily rate charged, it was not a question of trying to figure out what the actual cost was for Cleo Fowler individually, that the flat rate applied to everyone; that she did not know who determined the flat rates or how they were determined; and that she did not know why the flat rate increased by $300 from August to September in 1984.

These facts are analogous to those in *Collins v. State,* 506 S.W.2d 293, 297 (Tex. Civ.App.—San Antonio 1973, no writ). In *Collins,* as here, the superintendent of the State hospital did not testify; the claims officer there also testified that he prepared the verified claim and calculated the charges, but that the charges were established by the Board in Austin; that he prepared the claim based on the established charges; and that there was no way that he personally could break down such charges or determine the actual cost, but that the Board knew the actual cost. The court there held that this testimony did not constitute evidence that the cost shown in the State's claim exceeded actual cost to the State. We likewise hold that Barber's testimony does no more than question the method of computing costs; it does not amount to evidence tending to prove that the amount sworn to by the superintendent as the "amount due" was not actual cost or that the "amount due" exceeded the actual cost to the State. *Id.; Winchester,* 352 S.W.2d at 492.

Crawford also introduced into evidence the State's answers to her interrogatories numbers one, five and seven. Interrogatory number one identified the person answering the interrogatories on behalf of the State as Henry J. Johnson, Jr., Chief, Accounting and Management, Texas Department of Mental Health and Mental Retardation, Austin, Texas. Interrogatory number five asked for a detailed description of the methods by which the State established the rates charged for the support, maintenance, and treatment of Fowler and the method for determining the State's actual cost in that regard. In pertinent part, Johnson answered that the department calculates the maximum charges for support, maintenance, and treatment in a residential facility based on projected cost. He then described the method by which projected cost is calculated, and stated that "charges for persons in each facility for the mentally ill will be based on the average cost of each of those facilities."

Interrogatory number seven asked for documents which reflected upon the State's answers to Interrogatory number six (the State's actual per diem cost for Fowler's support maintenance and treatment during the various periods of hospitalization). The typed answer to this inquiry was:

See attached data on actual cost referenced by a cover letter identifying the

subject matter as "Per Patient Per Day Inpatient Cost for Twelve Months." *The actual cost for each period of charge to Cleo Fowler was greater than rate charged on projected rate.*

(Emphasis added.) Crawford marked the "attached data" referred to as Defendant's Exhibit number thirty-two and introduced it in evidence, but she later withdrew this exhibit. However, Crawford did not withdraw her offer of Interrogatory number seven; hence, the typed answer above remained in evidence.

As a result of her offers of the State's answers to these three interrogatories, Crawford established that the State calculates *maximum* charges for support, maintenance, and treatment of mentally ill patients based on *projected* costs and that the *actual* cost for each period of charge to Fowler was *greater than* the rate charged on the *projected* rate. The only evidence regarding the basis for the rates charged Fowler was Barber's testimony that she used the flat rate schedules from Austin. The answers to the interrogatories tend to prove that the State's verified claim was for *less than* actual cost, and once again, Crawford has failed to offer any evidence in rebuttal to prove that the State's claim *exceeded* its actual costs. Crawford offered no other evidence attacking the amount of the State's claim.

Accordingly, we hold that there was no evidence to support the jury's answers that the State had zero costs for all periods of hospitalization except the period from September 1–28, 1984, and that the State had only $800 in costs for this period. The State is only required to make the proof provided for in article 3196a, *id.;* when Crawford offered no controverting evidence in rebuttal, the State was entitled to judgment for the net amount of its claim attributable to all three hospitalizations as a matter of law, unless the State waived its right to sue for costs that it incurred during these periods. The jury found that the State did not waive its right to sue for the 1984 hospitalization; therefore, the State is entitled to judgment for its net costs for this hospitalization. However, the jury found that the State did waive its right to sue for its costs relating to the 1972 and 1979–80 confinements. Thus, we address the validity of these findings.

Crawford's affirmative defense of waiver was submitted in question number three. In its sixteenth point, the State contends that the trial court erred in failing to disregard the jury's answers to sections A, B, and C of this question and in not granting its motion for judgment n.o.v. We apply the standard of review for a no evidence point, as stated above. Issue No. 3 and the jury's answers read:

Do you find, from a preponderance of the evidence, that the State waived its right to sue to collect monies due it for the following periods:

| | | Yes | No |
|---|---|---|---|
| a. | May 30, 1972 through August 25, 1972 | x | |
| b. | May 30, 1979 through August 31, 1979 | x | |
| c. | September 1, 1979 through January 31, 1980 | x | |
| d. | July 11, 1984 through August 31, 1984 | | x |
| e. | September 1, 1984 through September 28, 1984 | | x |

You are instructed that "WAIVER" means the intentional relinquishment of a known right or intentional conduct inconsistent with claiming such right.

The State contends that there is no evidence of waiver by the State; to the contrary, it argues that review of all of the evidence Crawford introduced allegedly to support waiver shows that in reality her evidence amounted to nothing more than some evidence to support the defense of laches or estoppel. Crawford disagrees; she asserts that the record supports a finding that the State acted inconsistently with claiming the right to reimbursement for costs of the 1972 and 1979–80 hospitalizations by waiting until 1986 to bill Crawford, when the evidence shows that the State knew at least as early as 1979 that Fowler had properties sufficient to cover her costs. She maintains that this failure to bill her was intentional conduct incon-

sistent with claiming the right to sue for reimbursement, which meets one of the definitions of waiver submitted to the jury without objection.

Crawford does not contend that any representative of the State committed an affirmative act indicating an intentional relinquishment of the State's right to sue for costs incurred during Fowler's 1972 and 1979–80 hospitalizations. She bases her waiver defense solely on the failure of state agents or employees to seek recovery of these costs for a period of years.

■ In operating hospitals and asylums for the care and treatment of the mentally ill, the State performs a governmental, as opposed to a proprietary, function. *Arseneau v. Tarrant County Hosp. Dist.*, 408 S.W.2d 802, 803 (Tex.Civ.App.—Fort Worth 1966, writ ref'd n.r.e.); *Welch v. State*, 148 S.W.2d 876, 878 (Tex.Civ.App.—Dallas 1941, writ ref'd). To establish waiver by a governmental entity in the performance of a governmental function, a party must offer proof of such official acts as would warrant an inference of relinquishment of right. *Rolison v. Puckett*, 145 Tex. 366, 198 S.W.2d 74, 78 (1946). Further, a governmental entity discharging a governmental function cannot be bound by unauthorized acts of its officers in performing that function. *Id.*

■ Terrell State Hospital is a part of the Texas Department of Mental Health and Mental Retardation (MHMR). TEX. REV.CIV.STAT.ANN. art. 5547–202, § 2.01. Crawford has offered no evidence that any representative of MHMR, or Terrell State Hospital in particular, had the authority to waive the State's right to sue under article 3196a. Also, there is no evidence that the State's failure to seek reimbursement for the 1972 and 1979–80 hospitalization prior to 1986 was based on an official decision of department representatives. Consequently, Crawford has offered no evidence of official conduct supporting an inference that the State *intended* to relinquish its right to reimbursement.

■ We also reject Crawford's contention that the State's delay in seeking reim-

bursement was conduct *inconsistent* with claiming its right to reimbursement. The State is not subject to the defense of laches or to the defense of limitation unless limitation is permitted to run by the applicable statute. *Waller v. Sanchez*, 618 S.W.2d 407, 409 (Tex.Civ.App.—Corpus Christi 1981, no writ). Article 3196a does not permit limitation to run. Because the State is under no time restrictions, we conclude that its delay in seeking reimbursement, without more, cannot be deemed conduct inconsistent with asserting its rights under article 3196a. In sum, we hold that the facts here are insufficient, as a matter of law, to constitute waiver, since the State was acting in a governmental capacity. *See Rolison*, 198 S.W.2d at 78. At most, Crawford has offered evidence of laches, a defense not available against the State. *Id.* We sustain the State's sixteenth point.

Accordingly, we further hold that the State is entitled to judgment, as a matter of law, for the net amounts due relating to the 1972 and 1979–80 hospitalizations, as well as the 1984 hospitalization.

We note that the parties stipulated that the court could apply the offsets and credits applicable to any particular accounting period for which the State recovered under the verdict. The record reflects that this stipulation arose because the credits and offsets listed on the verified claim were in summary form and did not match, by dates, the five accounting periods submitted to the jury in question number two. After the verdict, the State was to present more detailed information as to when these credit amounts were received so that the court could apply the appropriate credits to the particular accounting period for which the State recovered. However, Crawford never disputed the accuracy of the various categories of credits and offsets or their total of $7,579.10. Because we have held that the State is entitled to recover for all five of the accounting periods submitted to the jury, there is no need for matching the credits to a particular accounting period. We have also held that there is no evidence to controvert the State's costs as reflected in the verified claim. Those costs total $25,848.80. The offsets amount to

$7579.10. Hence, the net amount due the State can be ascertained by simple mathematical calculation.

We reverse the trial court's judgment and we render judgment for the State in the sum of $18,269.70, plus court costs.