**The STATE of Texas, Appellant,**

**v.**

**Olan R. FARRIS and Wife, Dorthea Farris, Appellees.**

**No. 07–95–0386–CV.**

Court of Appeals of Texas, Amarillo.

Aug. 29, 1996.

Dept. of Mental Health & Mental Retardation, Juliet King, Austin, Marc Morrison, Wichita Falls, for appellant.

Law Office of Jerry D. Courtney, Jerry D. Courtney, Clarendon, for appellees.

Before DODSON, BOYD and QUINN, JJ.

QUINN, Justice.

The State of Texas sued Olan R. Farris and Dorthea Farris (collectively referred to as the Farrises) for reimbursement under § 552.013 of the Texas Health and Safety Code. After a jury trial, the court entered judgment upon the verdict and decreed that the State take nothing against them. The State appealed, alleging three points of error. The first two involve the trial court's refusal to disregard the jury's answers to special issues one and two and its decision to deny the State judgment notwithstanding verdict. The third point concerns the trial court's decision to submit special issue three, an issue dealing with the Farrises' claim for indemnification under 42 C.F.R. § 411.402. We reverse and render judgment.

### Background

As previously mentioned, the State sued to recover reimbursement for the support, maintenance, and treatment afforded Olan Farris at the Wichita Falls State Hospital. Olan was admitted to the facility on April 24, 1992, and placed in a "Medicare certified unit." However, on June 30, 1992, his "attending physician and the treatment staff" decided that the level of care he needed no longer met the level paid for by Medicare. Thus, they decided to transfer him to a "non-certified" geriatric unit and physically did so on July 8, 1992. Though written notification of their decision was given Mr. Farris before the move, it went for naught; he was incompetent at the time and could not comprehend the document.[1] Thereafter, he remained on the non-certified unit until discharged from the hospital on October 14, 1992.

Eventually, Dorthea Farris moved her husband, Olan, to a hospital in Lawton, Oklahoma and refused to pay Wichita Falls State Hospital for the services it rendered. Instead, she submitted the claim to the Texas Medical Foundation (TMF), a peer review board, for examination.[2] TMF concluded that the June 30th notice given to Olan was invalid due to his incompetence and that various charges could not be assessed by the hospital. Nevertheless, the hospital adjusted

---

1. The hospital sent his wife, Dorthea, correspondence disclosing that Medicare stopped paying for her husband's treatment and that she and her husband would be responsible for payment. Yet, they did not do so until July 30, 1992. Furthermore, the letter failed to mention that the unit in which he was placed was non-certified for Medicare.

2. A peer review board, or PRO, is an organization under contract with the Health Care Financing Administration (HCFA) to review the health care services or items furnished or proposed to be furnished to medicare beneficiaries. 42 C.F.R. § 400.200 (1995).

its bill and finalized the amount due at $17,-916.96.

### Points of Error One and Two

In points one and two, the State contends that the trial court should have 1) disregarded the jury's answer to special issues one and two and 2) granted it judgment notwithstanding verdict. We agree.

### Standard of Review and Substantive Law

■ Various preliminary matters require attention before we may analyze the points of error. The first concerns discussion of the applicable standard of review and the second, discussion of the pertinent substantive law. As to the former, we note that the State decries not only the legal sufficiency of the answers provided in response to special issues one and two but also the court's failure to award it the relief sought at trial. Given this, we see our task as essentially twofold. First, we must examine the record for evidence that supports the answer, construe that evidence, if any, in a way most favorable to the appellee, and ignore all conflicting matter. *Raw Hide Oil & Gas v. Maxus Exploration*, 766 S.W.2d 264, 276 (Tex. App.—Amarillo 1988, writ denied); *see State v. Crawford*, 771 S.W.2d 624, 626–27 (Tex. App.—Dallas 1989, writ denied) (applying an identical standard in a reimbursement case like that at bar). Assuming that no such evidence is found, the answer may be rejected. Yet, that does not necessarily entitle the appellant to the monetary award desired for we must still perform the second prong of our twofold burden. It again requires us to peruse the record but this time to determine whether the relief sought by the appellant was established as a matter of law. *Raw Hide Oil & Gas v. Maxus Exploration*, 766 S.W.2d at 276. Only upon our doing so and discovering that the evidence is so conclusive may we deign to render judgment for the State.

■ As to the matter of the substantive law, we note that the legislature dictated that no one may be denied treatment at a state hospital due to his inability to pay for same. *Tex. Health & Safety Code Ann.* § 552.013(a). Indeed, the State is obligated to provide support, maintenance and treatment to all regardless of their financial status. *Id.* at 552.013(b). Yet, that does not mean that all are entitled to free medical attention. Quite the contrary, those deemed "nonindigent" are subject to claims for reimbursement. *Id.* at 552.013(c). That is, the State may recover from them the actual cost of the services provided. *Collins v. State*, 506 S.W.2d 293, 296 (Tex.Civ.App.—San Antonio 1973, no writ); *see Tex. Health & Safety Code Ann.* § 552.016(a) (stating that a fee which exceeds the cost to the State may not be charged).

■ Should the patient or person responsible for the patient refuse to pay, statute authorizes the State to sue and recover judgment against them. *Tex. Health & Safety Code Ann.* § 552.019. Moreover, the evidence deemed sufficient by the legislature to warrant said judgment consists of nothing more than "a verified account, sworn to by the superintendent or director of the hospital in which the patient ... has been treated, as to the *amount due.*" *Tex. Health & Safety Code Ann.* § 552.019(c)(1) (emphasis added). In other words, the account, when properly verified and admitted into evidence, constitutes *prima facie* evidence of the amount due the State unless and until the defendant presents competent evidence indicating that the sum exceeds the actual costs incurred. *State v. Roark*, 876 S.W.2d 514, 518 (Tex. App.—El Paso 1994, writ denied); *State v. Crawford*, 771 S.W.2d at 625.[3]

### Application of Law to Evidence of Record

   a.   *Answer to Special Issue Number One (Point of Error One)*

■ In answer to special issue number one, the jury found that the charges levied

---

**3.** To the extent that the Farrises suggest that the State had to verify that the sum requested equalled the "actual costs" incurred, they are mistaken. Again, statute permits it to simply present a verified account revealing "the amount due." It lies with the patient to illustrate, in rebuttal, that the amount due differs from the actual costs.

*State v. Crawford*, 771 S.W.2d 624, 625 (Tex. App.—Dallas 1989, writ denied); *Winchester v. State*, 352 S.W.2d 491, 492 (Tex.Civ.App.—Eastland 1961, no writ). And, until the patient does so, the State is entitled to recover the amount claimed as due. *Winchester v. State*, 352 S.W.2d at 492.

by the hospital exceeded the actual costs incurred by the State in providing those services. To so conclude, it apparently relied on information elicited from Ellen Pruitt regarding calculation of the State's claim and Dorthea Farris's testimony regarding the costs charged by an out of state institution.[4] Yet, that testimony fails to constitute a scintilla of evidence.

### 1. Ellen Pruitt Testimony

The State called Ms. Pruitt, the hospital's reimbursement manager, to testify about its claim. On cross-examination she indicated that her office was "not ... responsible for determining the costs" charged since that was a function of the accounting department. Though the comment suggests that *she* may be unaware of the method by which the bill was derived as well as the actual costs involved, it does not constitute evidence that the costs were excessive. *State v. Crawford*, 771 S.W.2d at 628. Again, once the State presents the verified account, it is entitled to recovery without tendering anything else. It need not explain how the bill was derived or that charges were reasonable or necessary. *State v. Roark*, 876 S.W.2d at 518 (holding that the State need not prove that the charges were reasonable or necessary).

Nor can we deem Ms. Pruitt's comments concerning the manner by which Medicare calculated its payments as some evidence to support the answer to issue one. She did testify that the government program based its payments upon "prior years' cost reports" sent by the hospital and that Medicare paid only a portion of the claim arising from Olan's stay in a "Medicare certified" unit.[5] From this, the Farrises would have us infer that because Medicare failed to pay the entire claim, the charges reflected by that claim must have been excessive. Yet, to make such an inference we would have to assume, at the very least, that the expenses reflected in the "prior years' cost reports" were the same as those experienced by the hospital in 1992 and that the per diem rate selected by

Medicare equalled the actual costs incurred by the hospital (as opposed to an average or percentage of the costs). This we cannot do for the ability to assume facts not in the record lies beyond our legal prerogative. Thus, whatever inference can be drawn from Pruitt's testimony amounts to nothing more than nonprobative speculation.

### 2. Dorthea Farris Testimony

Like Ms. Pruitt, Ms. Farris was too called by the State. During her appearance on the witness stand she disclosed that her husband was later admitted to a "nursing home" in Lawton, Oklahoma and that the home charged approximately $49 to $56.50 per day. However, the Wichita Falls State Hospital charged approximately $195 per day. This disparity, according to Ms. Farris, constitutes some evidence of excessiveness. Yet, for us to agree, we would have to assume that the fixed and variable expenses of the two institutions were the same. And, before that assumption could be made we would have to assume that the services, staffing, and treatment comprising the expenses were identical or similar. However, there is nothing in the record permitting us to make such assumptions. Indeed, Ms. Farris herself admitted not only that the two facilities differed but also that many of the services and staffing at the state hospital were absent at the nursing home. Simply put, we refuse to accept that characteristics indigenous to oranges can be used to test the quality of apples.

Having found no evidence of record to support the jury's answer to special issue one, we find it legally insufficient. Thus, the State's first point of error is affirmed.

### b. Answer to Special Issue Number Two (Point of Error Two)

▮ The record contains the parties' stipulations that Olan and Dorthea were husband and wife when Olan was admitted into Wichita Falls State Hospital, that Olan was a patient in said hospital from April 24, 1992,

---

4. We say that it "apparently relied" on the testimony because our review of the entire record indicates that it was the only matter which could conceivably support the verdict.

5. Apparently, it used those reports to "decide[ ] what our per day reimbursement will be," and once the per diem rate was set it paid 100% of the amount.

to October 14, 1992, that Olan was " 'nonindigent' " during those six months, and that Dorthea was a " 'person . . . responsible' " for Olan as contemplated under Chapter 552 of the Texas Health and Safety Code. It further reveals that the State presented into evidence a "verified statement" executed by the superintendent of the hospital. Through that document, the superintendent attested that the hospital furnished Olan support, maintenance, and treatment equaling $17,-916.96. Given this evidence, the State presented *prima facie* evidence of its claim. Since the Farrises presented no evidence indicating that the claim was excessive, as concluded above, the trial court was obligated, as a matter of law, to adjudge them liable for the $17,916.96. *State v. Roark, supra; State v. Crawford, supra; Winchester v. State, supra.* Consequently, we sustain point of error two.

### Point of Error Three

Finally, the State decries submission of special issue number three to the jury. That question asked the jury to determine if the Farrises "did not know, and could not have reasonably been expected to know" that the expenses incurred at the state hospital, after June 30, 1992, were excluded by Medicare. The Farrises apparently requested its submission to perfect a claim for indemnification under 42 C.F.R. § 411.402. The latter purports to extend recipients of Medicare indemnity upon satisfaction of certain prerequisites.[6] But, as revealed from the expressed wording of the provision, the indemnity runs against Medicare, that is, the secretary of the Social Security Administration, not the entity supplying the treatment. 42 U.S.C.A. § 1395pp(b) (1993). Additionally, Medicare was not a party to the suit. Under these circumstances, any dispute regarding the jury's answer to issue three has no bearing on whether the State of Texas can recover its costs from the Farrises. Thus, our consideration of point three is un-

necessary to the final disposition of this appeal. *See Tex.R.App. P.* 90(a).

Accordingly, we reverse the judgment entered below and render judgment that the State of Texas recover from the Farrises, jointly and severally, the sum of $17,916.96, its costs of court incurred below and on appeal, and post-judgment interest on the $17,916.96 sum and court costs at the rate of ten percent per annum until paid.

---

6. The provision states that "[i]f Medicare payment is precluded because the conditions of § 411.400(a)(2) [involving the beneficiaries knowledge about the extent of Medicare coverage] are not met.[sic] *Medicare* indemnifies the beneficiary (and recovers from the provider, practitioner, or supplier), if the following conditions are met. . . ." 42 C.F.R. § 411.402(a) (emphasis added). To the extent that the regulation may permit Medicare to proceed against the hospital, there is nothing in the record to suggest that the Farrises have standing to assert that right on behalf of Medicare.